GEORGE M. STRUBLE, Appellee, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

Railroads: NEGLIGENCE: VICE PRINCIPAL: EVIDENCE. In an action
1 by an employé against a railway company for injury received while switching cars, the evidence is held to support a finding that the relation of a brakeman to the work of switching was that of a vice principal for whose negligence the company was liable.

Negligence: EVIDENCE. Under the evidence a finding of negligence

on the part of one in charge of the work of switching cars, resulting in injury to an employé, was warranted.

**Same.** Evidence reviewed and held to support a finding that the injury to plaintiff, while engaged in switching cars, was the result of negligence on the part of a brakeman in charge of the work and not that of the plaintiff in attempting to catch a moving car.

**Negligence Defined:** INSTRUCTION. Negligence may be imputed in connection with acts of omission or commission and such is held to be the thought conveyed by the reading to the jury of the court's charge in the instant case, although in the printed record the punctuation is such as to possibly exclude acts of omission.

**Personal Injury:** EXCESSIVE DAMAGES. A verdict for $12,000 in favor of a brakeman, 27 years of age, earning $60 to $70 per month, for an injury resulting in a loss of the left arm, is held excessive and is reduced to $7,500.

*Appeal from Tama District Court.*— HON. OBED CASWELL, Judge.

WEDNESDAY, APRIL 12, 1905.

ACTION for damages for a personal injury.. In the main the facts are not involved in controversy. At the time of his accident and injury plaintiff was in the employ of defendant as a freight brakeman. The accident occurred in the yards of the defendant at Muscatine, and while the train crew to which plaintiff belonged was engaged in switching to make up a train destined for Cedar Rapids. The train crew consisted of a conductor, the engineer and fireman in charge of the engine, and two brakemen — one Moore, and plaintiff. The conductor was temporarily absent at the time, and the switching was being done by the engine crew and the two brakemen. The main line of the track runs nearly north and south, with a side track on the west. The latter connects with the main line in the usual manner by a switch. The rails of the side track diverge from the main track until a point is reached where passing cars will clear each other, and then run parallel with the main track. The switch was con-

trolled from a stand located immediately adjacent to and on the west side of the track. At the time the engine was headed north, and had been backed in upon the side track, and there coupled to four freight cars. It then pulled north past the switch, and upon the main line, stopping so that the rear car was some two car lengths north of the switch. As the cars were being pulled past the switch, plaintiff went to the switch stand, turned the lever so as to disconnect from the side track and leave the main line free for passage. Moore, who had passed on with the cars, then uncoupled the two rear cars, when the engine was backed down, making a " kick " as it is called; that is, making a quick backward movement and then stopping, the momentum being sufficient to run the uncoupled cars down upon the main line past the switch. As such cars passed over the switch, plaintiff at once turned or threw the lever, thereby again making connection with the side track. As the engine stopped, the rear car, still attached thereto, was between one and two car lengths north of the switch.

When the switch had been turned by plaintiff, Moore, who had remained with the cars still attached to the engine, at once uncoupled the rear car, and in response to his signal the engineer made a kick to run the car back in upon the side track. It appeared from the testimony of Moore given on the trial that as he cut the car off and it started back he glanced down the track and realized it was likely that such car would collide with the cars on the main track. He at once called to plaintiff to catch the car, which we understand to mean to go upon it, and by means of the brake operated from the top control the movement thereof. In response to such call, plaintiff at once stepped over and met the car. The car was provided with an end ladder, the same being close to the side to the west, and this plaintiff took hold of, and proceeded to climb to the top. The two cars that were sent down the main track had not in fact proceeded quite far enough to clear a car passing in upon the side track, and as plaintiff got upon the car the corner thereof struck the corner

of the north car standing on the main line, the impact causing him to lose his balance and to fall or be thrown from the top of the car to the ground. Such further facts as are material will be referred to in the course of the opinion. The case was tried to a jury, and from a verdict and judgment in favor of plaintiff the defendant appeals.— *Reversed.*

*Carroll Wright, John I. Dille,* and *Willett & Willett,* for appellant.

*Charles A. Clark & Son* and *Struble & Stiger,* for appellee.

BISHOP, J.— I. By a motion to direct a verdict in its favor, and again by motion for new trial, the defendant challenged the sufficiency of the evidence to make out a case for recovery on the part of plaintiff.

The gravamen of plaintiff's action is negligence on the part of defendant, to which he did not contribute, and the allegations of the petition devoted to the subject may be summed up as follows: That defendant negligently and carelessly placed the two freight cars on the main track, and so near to the side track that the car plaintiff was ordered to catch could not pass along the side track without coming in collision therewith, the fact of the position of such cars being unknown to plaintiff; that defendant was further negligent in throwing the car which plaintiff was ordered to catch in upon the side track, and moving such car along the same while the cars placed upon the main track remained thereon so that said car would collide therewith; that defendant and its employés were negligent in ordering and requiring plaintiff to catch said car while the same was approaching a collision with the cars on the main track.

The contention of appellant is that the record fails to disclose that the accident and injury complained of was proximately caused by negligence on its part; that, on the contrary, the evidence makes it clear that such accident was

the direct result of a failure on the part of plaintiff to exercise ordinary care and to perform a known "duty imposed upon him.

In proceeding to determine the matter of controversy thus presented, we may begin by ascertaining what were the respective duties and responsibilities resting at the time upon

1. RAILROADS: negligence; vice-principal; evidence.

the two men, Moore and the plaintiff, as far as disclosed by the evidence. And first as to Moore. We shall not go to the trouble of bringing forward the evidence in detail. It is sufficient to say that, viewed in the light most favorable to plaintiff, as we are required to do, a finding was warranted to the effect that Moore was in control of the work. In point of fact, he represented the conductor. He had the switching list, from which he learned what cars were to be taken into the train, and the position which each thereof was to occupy, and it was upon the basis of such list that the train was being made up by him. It was his duty to cut off or uncouple the cars as required, and it appears that the engine crew acted solely in response to signals given by him. In every material respect, therefore, his relation to the work was that of a vice principal, and not that simply of a co-employé. Now, as to plaintiff, it appears that his working position was at the rear, and it is made clear by the evidence that it was his duty to catch the cars as they were kicked back on the proper track, and to see that they went into clear, and to their proper places. In addition to this, there is support in the evidence for the claim as made by plaintiff that it was his duty to obey orders coming from Moore having relation to the work being done.

Having the situation in its material aspects before us, we may take up the question whether a finding of negligence on the part of defendant was warranted. As we think, the

2. NEGLIGENCE: evidence.

situation admits of but one answer to such question, and that an affirmative one. A finding that Moore was in authority amounts to a finding that it was his duty to so order the work as to avoid accidents. He was

in control of the engine, and he should have seen to it that the cars sent down the main line had gone into the clear before he gave the signal to kick back the third car. There is no pretense that the situation was not open and visible to him, and the jury had warrant for finding that in the matter of cutting off the cars and sending them back he had acted solely upon his own motion. As to the fact of the collision, then, it is quite within reason to conclude that the same was the direct result of a want of due care on his part. Now, Moore having, by his own act, brought about a condition fraught with danger, it is quite an easy step to say that he had no right to order plaintiff, abruptly and without warning, into the face of the threatened danger, and thus leave him to take the chance of any accident that might result therefrom. As the jury may have found that plaintiff was unaware of the danger, it follows that a conclusion of negligence on the part of defendant was fully warranted. The following cases are in point: *Fox v. Railway,* 86 Iowa, 368; *Strong v. Railway,* 94 Iowa, 380; 4 Thompson on Negligence, sec. 3814 *et seq.*

We turn now to the question, was plaintiff himself in the exercise of due care? As bearing upon this question, these additional facts, which the evidence tended to prove,

3. SAME.

may be stated: The third car was cut off by Moore at once upon the throwing of the switch by plaintiff, and this was barely accomplished when the order was given to plaintiff to catch the coming car. Had plaintiff then looked, he could have seen that the cars on the main track were still moving, but he says that he had no time to wait and see if they reached the clear. Further, he says that he did not have time to ascertain the cause of the order to catch the car, either by inquiry or by inspection, as the rapidly moving car was upon him, and he had no alternative but to obey such order. And this the jury may very well have believed in view of the fact that the car was but little, if any, more than its length away when the kick was made, and the entire action must have been confined to but a few seconds of

time.   Conceding, then, that it was the duty of plaintiff, generally speaking, to see that all cars went into clear or to a place of safety, still out of the situation here presented we cannot say that the jury was not justified in finding that for the moment he was relieved of such duty, and was called upon to give his entire attention to the duty of catching the car as it moved down over the switch.   Plaintiff says that he could not do two things at once, and his statement is not altogether unreasonable.   Now, as plaintiff caught the car and proceeded to climb to the top, his back was to the south, and he says that before he could turn around and advise himself as to the situation, the collision came, and he was thrown to the ground.   *Harker v. Railway,* 88 Iowa, 409.

The appellant railway contends with much earnestness that the act of plaintiff in throwing the switch as soon as the main line cars had passed over was, in effect, an invitation to Moore to send back the third car; and, accordingly, that plaintiff was negligent in that he misled Moore into believing that such third car could be cut off in safety.   It is sufficient to say that this involved a question for the jury, and very properly they may have concluded that, instead of being misled, Moore's act was purely the result of his own carelessness in failing to observe what it was his duty to observe.   Moreover, we cannot say that the jury were not warranted in finding that it was not a proper act on the part of plaintiff to at once throw the switch, and thus be ready for the car when Moore, in the exercise of due care, should cut it off and send it back in safety.

Without any further discussion of the facts appearing in the record, we conclude that the jury were warranted in finding the material allegations of the petition to be true in fact, and therefore that the trial court in such respect rightly refused to set aside the verdict.

II.   Appellant complains of the giving of certain instructions as follows:   In the ninth instruction it is said that " negligence means the failure to use or exercise that degree

of care which the law requires; that is, ordinary care, or the
doing of that which ordinary care and caution
would dictate should not be done." In the
tenth instruction ordinary care is defined, and in
the eleventh it is said that "contributory negligence would
be negligence, as above defined, on the part of the plaintiff,
uniting with the negligence of the defendant, and contrib-
uting to the result and injury and damage complained of."

**4. NEGLIGENCE DEFINED: instruction.**

The ninth instruction is said to be erroneous for that
but one thought is presented thereby, and that is that negli-
gence may be imputed only in connection with acts of com-
mission. If the instruction is vulnerable to such criticism, it
is manifest that, considered by itself, it was unduly favorable
to defendant. The contention for prejudice, however, is
based upon the language used in the eleventh instruction,
wherein it is said that contributory negligence is "negligence
as above defined," etc. It is true enough that negligence in-
volves matters of omission as well as commission. But we
think the ninth instruction is not open to the criticism that
matters of omission are thereby excluded from consideration.
The fault of the instruction, as it appears in the printed
record, is with the punctuation; that is, the semicolon after
the word "requires" and the comma after the expression
"ordinary care," as it first appears, should be transposed.
The instruction would then read, in substance, that negli-
gence may consist of a failure to use or exercise ordinary
care, or in the doing of that which ordinary care dictates
should not be done. We have no doubt but that such was the
understanding intended to be, and which was in fact, con-
veyed to the jury by the reading of the instructions.

Other instructions are complained of, and as to each we
have given due consideration, with the result that we find no
prejudicial error.

III. The verdict and judgment was for the sum of
$12,000, and appellant complains thereof as excessive. We
think the complaint is well founded. The injury to plaintiff

was in the loss of his left arm and in the pain and suffering usual to an injury of that character. At the time of his injury he was 27 years of age. He had been a brakeman about a year, and prior to that a farm hand. His wages as a brakeman was from $60 to $75 per month. Our cases bearing upon the subject are familiar to the profession, and we need not go over them.

5. PERSONAL INJURY: excessive damages.

From what we have said it is manifest that there must be a reversal on the sole ground that the judgment is excessive. This, however, is upon condition that plaintiff may, if he so elects, within thirty days from and after the filing of this opinion, file a remittitur of all that portion of the judgment over and above the sum of $7,500, in which event the judgment as for such sum will stand affirmed; otherwise it will be reversed, and a new trial ordered.— *Reversed.*