## C. W. BRADBURY v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Railroads:** INJURY TO BRAKEMAN: ASSUMPTION OF RISK: INSTRUCTIONS. In this action for injury to a brakeman caused by a protruding bolt in the car from which he was descending, an instruction that if plaintiff knew or by the exercise of ordinary care might have known of the existence of the protruding bolt, and he appreciated the danger therefrom he could not recover was sufficient, over the objection that the court should have instructed that if he knew that defendant customarily operated cars with protruding bolts, and knowing of this custom appreciated the peril incident thereto he should be held to have assumed the risk; especially as no request for such an instruction was made.

**Conflicting state and federal statutes:** CONCURRENT JURISDICTION. The statute of a state which conflicts with a federal statute upon the same subject must give way to the federal statute. But a right given by a federal statute may be enforced in the state courts unless exclusive jurisdiction is reserved thereby to the federal courts.

**Same:** INTERSTATE COMMERCE: INJURY TO EMPLOYEE: FEDERAL STATUTE: JURISDICTION. The federal statute making railway companies engaged in interstate commerce liable for injury to an employee engaged in such commerce does not reserve to the federal courts exclusive jurisdiction in such cases; nor does it effect such changes in practice as indicate an intention that redress may be had in the federal courts only. The act effects quite as important changes and presents as great difficulty in the trial of causes in the federal court as in the state courts. And even though the petition in an action for injury to an employee states a case under the federal statute, it may still be prosecuted in the state courts.

**Pleadings:** AMENDMENT: DISCRETION. In this action defendant filed an amendment to its answer after all of the evidence had been offered, alleging that plaintiff's injury was received while employed on a train engaged in interstate commerce. *Held,* that it was not an abuse of discretion to strike the amendment from the files.

**Same:** EXCLUSION OF EVIDENCE. The fact that plaintiff was engaged in interstate commerce when injured not having been plead, it was proper to strike from the record evidence tending to show such employment.

**Personal injury:** EXCESSIVE DAMAGES. Plaintiff in this action, who was a brakeman, was twenty-four years of age, earning $80 to $85 per month, was in good health prior to the action, but suffered pain for some time thereafter, and lost his right arm below the elbow as a result of the injury. *Held,* that the verdict for $15,000 was excessive, and it was reduced to $12,000.

*Appeal from Emmet District Court.*—HON. D. F. COYLE, Judge.

WEDNESDAY, OCTOBER 26, 1910.

ACTION for damages resulted in judgment against defendant, from which it appeals.—*Affirmed* on condition.

*Carroll Wright, J. L. Parrish,* and *Crim & Morse,* for appellant.

*J. L. Myerly* and *Mack J. Groves,* for appellee.

LADD, J.—The freight train left Emmetsburg for Dows at about 1:45 o'clock in the morning of July 1, 1908. The plaintiff was head brakeman and had been in defendant's employment about twenty months. He was directed by the conductor at Graattinger to take two stock cars from the side track and place them immediately back of two refrigerator cars next the engine. In order to accomplish this, he uncoupled the remainder of the train from the refrigerator cars, and, after disposing of it and attending to switching, got on the second refrigerator car at the end toward the engine and rode as these backed on the side track on which the stock cars stood. Both his feet were in the stirrup at the side and near the end of the car, one hand hold of the fourth rung of the ladder, and the other carrying a lantern. When the cars had moved to the depot platform, he was about to get off; but, as one foot reached the platform, his glove caught on a bolt between the third and fourth rung of the ladder, and this jerked him between the cars, where he hung an instant and then fell to the ground. The wheel of the car ran over his right arm, so injuring it that amputation was necessary. The negligence alleged was the leaving of the bolt protruding at a locality likely to cause injury. The defendant pleaded that the risk had been assumed, and adduced evidence tending to show that from all its refrigerator cars bolts protruded with nuts on them an half inch thick, from which the ends of the bolts usually extended beyond the nut from nothing to five-eighths of an inch, and that in every car was a bolt about where the one occasioning the injury was located. On the other hand, the evidence tended to show that the ends of most of the bolts were flush with the nuts, and that plaintiff had no knowledge of this bolt. Plaintiff had been in defendant's employment as brakeman about twenty months, and one or more refrigerator cars was in nearly every train.

I. The court instructed the jury, in substance, that

if plaintiff knew, or by the exercise of ordinary diligence might have known, of the existence of the protruding bolt and appreciated the dangers therefrom, he could not recover. Exception is taken to this on the ground that knowledge or its equivalent concerning the particular bolt was exacted, and it is said that the jury should have been told that if plaintiff knew that defendant customarily operated cars with bolts protruding, and plaintiff knew of this custom and appreciated the peril incident thereto, then he should be held to have assumed the risk. Possibly, had such an instruction been requested, it should have been given, for if refrigerator cars with protruding bolts were customarily used on the road to plaintiff's knowledge, and concerning which he knew the danger, it might well be held that, in the exercise of reasonable care, he must have ascertained the condition of the car he rode on at the time of the accident. This would be the only ground for so holding, and in the instruction given it was clearly stated that, if in the exercise of ordinary care he might have known of the protruding bolt and have appreciated the danger, he must fail. So that whether the knowledge charged be from the understanding of a custom or direct information, the rule is in harmony with the instruction, and, had defendant desired that the law be more specifically applied to the proof, counsel should have so requested. In the absence of such request, there was no error.

*1. RAILROADS: injury to brakeman: assumption of risk: instructions.*

II. Evidence was received, subject to objection, showing that, as part of the train, a carload of eggs was being transported from Ellsworth, Minn., through this state to Chicago, Ill., and that several other carloads of freight were being taken to the latter place and other points in Illinois. After all the evidence had been introduced, defendant moved that the jury be directed to return a verdict in its favor, for that, among other things, plaintiff at the time of receiving the injury was employed in the opera-

tion of a railway train engaged in interstate commerce, and recovery could only be had under an act of Congress approved April 22, 1908, (35 Stat. 65 [U. S. Comp. St. Supp., 1909, p. 1171]). Thereupon plaintiff moved that all the evidence of interstate shipments introduced subject to objection be stricken from the record. The court having intimated that defendant's motion must fail because of not having pleaded that the injury was received while connected with a train engaged in interstate commerce, defendant filed an amendment to its answer raising that issue. Plaintiff moved to strike this amendment because filed too late and the matter alleged did not constitute a defense. This motion was sustained, as, also, was the motion to strike the evidence. An instruction to direct a verdict in defendant's favor because of it being engaged in interstate commerce at the time of the accident was requested and refused.

It will be noted that the rulings raise the following questions: (1) Was evidence tending to show that defendant was engaged in interstate commerce admissible in the absence of anything in the answer so asserting? (2) If not, did the court err in striking the amendment so pleading from the files? (3) In either event, can the right created by the so-called employer's liability act be enforced in the state courts?

For convenience, the last may be disposed of first. The constitutionality of the act is not assailed. That it is likely to be upheld finally is fairly to be inferred from the several opinions in *Howard v. Ill. Cent. Ry.*, 207 U. S. 463 (28 Sup. Ct. 141, 52 L. Ed. 297), though a different view appears to have been entertained by the Supreme Court of Connecticut. *Hoxie v. Railway*, 82 Conn. 352 (73 Atl. 754). See *El Paso & N. E. R. Co. v. Gutierrez*, 215 U. S. 87 (30 Sup. Ct. 21, 54 L. Ed. ——). In the *Howard* case, the court held that Congress had the power, under the clause of the Constitution authorizing it to

regulate commerce among the several states, to define the duties and liabilities of master and servant when engaged in interstate commerce. Until the approval of this act, at least, the statutes of the state defining the liability of railway companies to their employees were valid and enforceable (*Sherlock v. Alling*, 93 U. S. 99, 23 L. Ed. 819), even when engaged in interstate commerce.

A state statute, when covering a matter within the powers of Congress and necessarily conflicting with an act of that body, must give way to the federal statute. The rule is tersely stated in the case last cited:

2. CONFLICTING STATE AND FEDERAL STATUTES: concurrent jurisdiction.

"The power to prescribe these and similar regulations necessarily involves the right to declare the liability which shall follow their infraction. Whatever, therefore, Congress determines either as to regulation or the liability for its infringement is exclusive of state authority." *Gulf, C. & S. F. R. Co. v. Hefley*, 158 U. S. 98 (15 Sup. Ct. 802, 39 L. Ed. 911); *Interstate Com. Comm. v. Detroit, etc., Ry.*, 167 U. S. 642 (17 Sup. Ct. 986, 42 L. Ed. 3093). See *Western Union Tel. Co. v. James*, 162 U. S. 654 (16 Sup. Ct. 934, 40 L. Ed. 1106). But there is nothing in the petition in the case at bar to indicate whether the cause of action is predicated on the state or federal statutes, and we have no occasion to inquire to what extent, if at all, the statutes of this state eliminating the fellow-servant rule have been superseded by the federal statutes.

For the purposes of this case, it may be conceded that the facts bring it within the terms of the federal statute, and that plaintiff must recover thereon, if at all. The petition stated a cause of action thereunder, and, unless it can be said that federal courts have exclusive jurisdiction in the enforcement of rights created or declared in advancement of those previously existing, there is no ground for interfering with the judgment entered. The matter of jurisdiction is not touched in the act of Congress,

and it is now well settled that state courts may exercise concurrent jurisdiction with the federal courts in all cases arising under the Constitution, laws, and treaties of the United States, unless exclusive jurisdiction has been conferred, expressly or by necessary implication, on the federal courts. *Claflin v. Houseman,* 93 U. S. 130 (23 L. Ed. 833); *Raisler v. Oliver,* 97 Ala. 714 (12 South. 238, 38 Am. St. Rep. 215); *Wilcox v. Luco,* 118 Cal. 642 (45 Pac. 676, 50 Pac. 758, 62 Am. St. Rep. 306, 45 L. R. A. 582); *Schuyler Nat. Bank v. Bollong,* 24 Neb. 827 (40 N. W. 414); *Bletz v. Columbia Nat. Bank,* 87 Pa. 92 (30 Am. Rep. 345); *Brinckerhoff v. Bostwick,* 88 N. Y. 60; *People v. Welch,* 141 N. Y. 273 (36 N. E. 328, 24 L. R. A. 117, 38 Am. St. Rep. 793); 11 Cyc. 996.

In the case first above cited, the Supreme Court, speaking through Bradley, J., said:

The general question, whether state courts can exercise concurrent jurisdiction with the federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises, sometimes with a leaning in one direction and sometimes in the other; but the result of these discussions has, in our judgment, been, as seen in the above cases, to affirm the jurisdiction, where it is not excluded by express provisions or by incompatibility in its exercise arising from the nature of the particular case. When we consider the structure and true relations of the federal and state governments, there is really no just foundation for excluding the state courts from all such jurisdiction. The laws of the United States are laws of the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent and, within its jurisdiction, paramount sovereignty. Every citizen of a state is a subject of two distinct sovereignties, having concurrent jurisdiction in the state; concurrent as to places and person, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court

of either sovereignty competent to hear and determine such kind of rights and not restrained by its Constitution in the exercise of such jurisdiction. Thus a legal or equitable right acquired under the state laws may be prosecuted in the state courts, and also, if the parties reside in different states, in the federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the state courts, competent to decide rights of the like character and class; subject, however, to this qualification, that, where a right arises under a law of the United States, Congress may, if it see fit, give to the federal courts exclusive jurisdiction. This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an 'act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.

An illustration of the exercise of exclusive jurisdiction by the federal courts will be found in *Copp v. Ry.,* 43 La. Ann. 511 (9 South. 441, 26 Am. St. Rep. 198, 12 L. R. A. 725), where a plea to the jurisdiction of the state court was sustained on the ground that the act of Congress on which the action for damages was based directed that it be brought in the United States courts. In *Hoxie v. Ry., supra,* the Supreme Court of Connecticut reached the conclusion that by fair implication the act of Congress excludes jurisdiction of the state courts, and, in any event, the state court was under no obligation to enforce the rights

therein created.   The last point appears to have been considered as though involving a question of comity merely, regardless of the convenience and propriety of enforcing all rights and redressing all wrongs within the jurisdiction of the local courts.

The prevailing rule is that, where a cause of action accrues by virtue of the statute of any state, the action may be maintained in any other state if not contrary to the public policy or law of the place where the suit is brought. *Boyce v. Railway,* 63 Iowa, 70; *Morris v. Railway,* 65 Iowa, 727.   See cases collected in note to *Reeves v. Railway,* 70 L. R. A. 513.   In such cases, the law of the place where the right was acquired or the liability incurred will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought.   *Herrick v. Railway,* 31 Minn. 11 (16 N. W. 413, 47 Am. Rep. 771).

Even where the cause of action arises in a foreign country, suits may be maintained in our courts, though jurisdiction can be declined; but this is seldom done unless from fear of inability to do full justice through lack of knowledge of the laws of the place where the cause of action arose.   *Mason v. The Blaireau,* 6 U. S. 240 (2 L. Ed. 266); *Roberts v. Dunsmuir,* 75 Cal. 203 (16 Pac. 782); *Great Western R. Co. v. Miller,* 19 Mich. 305; *Cofrode v. Gartner,* 79 Mich. 332 (44 N. W. 623, 7 L. R. A. 511); *Evey v. Railway,* 81 Fed. 294 (26 C. C. A. 407, 38 L. R. A. 387); 11 Cyc. 663.   The reasons which induce state courts to exercise jurisdiction of causes of action arising in a foreign country or under legislation of another state should be quite as persuasive in favor of assuming jurisdiction over causes of action arising under the statutes of the United States, with this in addition, that these are the laws of the very people the jurisdiction of whose courts is invoked.   See 11 Cyc. 996.   If a cause of action has become fixed and a legal liability in-

curred, the doors of the courts of this state should not be closed to the prosecution of such cause of action, regardless of whether the same may have arisen under the statutes of another state, an act of Congress, or the laws of a foreign country, unless to enforce it would be contrary to the laws or public policy of the state or complete justice probably could not be done.

Unless the act of Congress should be construed to confer exclusive jurisdiction on the federal courts, or the mode of procedure is such that the state courts can not safely undertake to enforce the liability defined, there seems no ground for declining to exercise a jurisdiction fully approved by the authorities. The statute is silent concerning jurisdiction; but it is said that the rules of practice prescribed therein and the direction as to who shall be the beneficiaries thereunder are so inconsistent with the state laws as to indicate the congressional intent that redress may be had in the federal courts alone. In order to dispose of this objection, it will be necessary to set out the main provisions of the act:

3. SAME: interstate commerce: injury to employee: federal statutes: jurisdiction.

Sec. 1. That every common carrier by railroad while engaging in commerce between any of the several states and territories, or between the District of Columbia or any of the states or teritories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Sec. 3. That in all actions hereafter brought against

any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

Sec. 4.   That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to or the death of any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

Sec. 6.   That no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued.

It is manifest from the mere reading that this act effects quite as important a change in the trial of such causes in the federal courts as would be possible in the state courts. Thus the federal decisions are harmonious on the proposition that the negligence of complainant which contributes proximately to the injury will defeat the recovery of damages therefor.   So, too, in the absence of local statutes, the fellow-servant doctrine and that of assumption of risks have been broadly applied in all federal courts.   Hereafter all of these rules are to be modified or eliminated where the injuries are such as contemplated in the above act.   If inconvenience and confusion would result from an attempt to enforce the acts in the state courts, like consequences will be the outcome of a similar undertaking in the courts of

the United States.   Let us examine the several sections and
ascertain the alleged inconsistencies which are said to pre-
clude the maintenance of actions based thereon in the state
courts.   No one, we apprehend, would say that the state
courts are not competent to entertain suits by the persons
authorized by section 1 to recover damages or to distribute
those recovered as specified.   Under the statutes of this
state, the suit is prosecuted in the name of the administrator
where death is alleged to have resulted from wrongful act,
and anything recovered distributed as personal property
among the heirs.   It goes to the surviving spouse and chil-
dren if any there are, and, if not, to the parents of the
deceased precisely as under the federal statute.   In event
there are neither spouse and children nor parents of de-
ceased, the remoter heirs are entitled thereto under the state
statute, while under this act the damages go to the next of
kin dependent upon deceased.   As the state statute must
give way to that of Congress, no inconsistency is involved.
All essential is that effect be given the latter as though the
former were not on the statute book.   Nor can it be said
that this involves an interference by Congress with the dis-
tribution of an estate through the probate court of the
state.   The cause of action was created by Congress in the
exercise of its power to regulate commerce among the several
states, and it is elementary that in doing so it might deter-
mine who was entitled to maintain the same and for whose
benefit.   The administrator is not required thereby to
institute proceedings; he may do so, and in that event can
recover only for the benefit of the person entitled under
the act to the damages.   The administrator therein sustains
the relation to the beneficiaries like that of trustee to his
cestui que trust, and it is of little concern whether he
shall distribute the damages recovered in pursuance of an
order of the court wherein recovered or in the appropriate
probate court.   Surely no court would permit an adminis-

trator, after recovering damages under a statute specifically prescribing who is entitled thereto, to divert the money elsewhere.

It must be borne in mind that this act does not relate to the distribution of the personal property of an estate. The cause of action does not belong to the estate of the deceased person, but to certain classes for whose benefit the administrator is authorized to recover damages, and we see no ground for saying this is contrary to our law or its policy. In a few states, notably Connecticut, the fellow-servant doctrine is still applied in cases of injury caused in the use and operation of railways, and it seems to have been thought in the *Hoxie* case that for a state court to apply that doctrine in causes based on injuries received in intrastate commerce, and to proceed in actions based on the federal statute on the theory that the master is responsible for the acts of the fellow-servant, would create confusion "setting up in the same tribunal different standards of right and policy and practice." More than fifty years ago, the fellow-servant doctrine was eliminated by the Legislature of this state wherever the injury was occasioned by the negligent act of the fellow-servant engaged in the use and operation of a railway, and, though that doctrine has been continually applied in all cases involving injuries suffered in other employments, little difficulty has been experienced in discriminating between situations exacting the application of the different rules. Indeed, the situation of employees engaged in the operation of railways ordinarily is such that they can exert little direct or personal influence upon each other in discharging their respective duties, and their opportunities for guarding against the negligent acts of one another are so limited that in many, if not in most, of the states, laws have been enacted declaring the master liable for the negligent acts of the servant when engaged in the use and operation of railways, even though the injured party be a fellow-servant.

And we apprehend that the design of Congress was to furnish this measure of protection to employees engaged in interstate commerce in those states where, for reasons such as are suggested in the *Hoxie* case, none have been provided by local legislation. Section 4 is somewhat similar to a statute of this state relating to assumption of risks. Chapter 219, Acts 33d General Assembly. And the only difficulty in entertaining suits for liability under the act of Congress, as it seems to us, will develop in the construction and application of section 3. Under the decisions of this state contributory negligence, if the proximate cause, has always been held to defeat recovery. But such has been the rule in the federal courts and, as said, is now, save as modified by this act. No greater difficulty will confront the state courts in applying this or other sections of the act than the courts of the United States, and for this reason there is no ground for inferring from the somewhat radical nature of the act that it was the intent of Congress to confer exclusive jurisdiction on the federal courts. With all due respect for the eminent court holding otherwise in *Hoxie v. Railway, supra,* we are not persuaded by the reasoning of its opinion. Differences between the federal and local courts no greater than those between different statutes or laws of the same state do not alone justify the conclusion that Congress intended to deny jurisdiction of the state courts, nor furnish a satisfactory reason for refusing that comity due to the sovereign government. Nor does it appear to have convinced the Congress, for an act approved April 5, 1910 (Act April 5, 1910, chapter 143, 36 Stat. 291), declared the jurisdiction of the United States Courts under this act concurrent with that of the state courts, and further declared that "no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

The ruling of the trial court in retaining jurisdic-

tion has our approval.  As the amendment to the answer
was filed after all the evidence was ad-

**4. PLEADINGS:**
**amendment:**
**discretion.**

duced, the court did not abuse its dis-
cretion in sustaining the motion to strike.

Nor do we think there was error in striking the evidence tending to show that plaintiff was at the time he received the injury engaged in interstate commerce.  The fact that he was so engaged had not been

**5. SAME: exclu-**
**sion of evi-**
**dence.**

alleged in the petition nor asserted in the answer; so that whether he was so engaged was not in issue.  As argued, it is not necessary to plead the statutes of the United States; but, to invoke their benefit, facts rendering these applicable should be pleaded.  All essential under the state law was proof that the injury was received because of the negligence of the company in the use or operation of its railway within the state, for until the contrary was made to appear it will be presumed to have been engaged in intrastate commerce.  The evidence was rightly excluded.

III.  Plaintiff was allowed $15,000 as damages, and this is said to be excessive.  He was twenty-four years old and earning $80 to $85 per month.  His life expectancy was thirty-nine and one-half years.  Prior

**6. PERSONAL IN-**
**JURY: exces-**
**sive damages.**

to the injury, his health was good, and since then it has been poor.  He suffered pain at the time of the accident and afterwards for four or five days it was severe.  The right arm was amputated about two inches below the elbow.  In *Struble v. Railway,* 128 Iowa, 158, a verdict of $12,000 for the loss of the left arm in favor of a brakeman twenty-seven years old and earning $60 to $70 per month was held excessive and reduced to $7,500. In *Knapp v. Railway,* 71 Iowa, 41, a verdict of $9,500 in favor of an engineer under forty years of age earning $100 per month for permanent disability of right arm was held not excessive.  See *Grannis v. Railway,* 81 Iowa, 444; *Sprague v. Atlee,* 81 Iowa, 1.  In

*Kroener v. Railway,* 88 Iowa, 16, and *Wimber v. Railway,* 114 Iowa, 551, the losses were of a leg, and in each the damages were reduced from $12,000 to $8,000. The facts of cases differ so much that no criterion can be established. The loss of an arm will not prevent plaintiff from pursuing another occupation, though always at an inconvenience, and probably with less remuneration. Upon examination of the entire record, we are satisfied that the sum of $12,000 will compensate him for the injuries received, and, if the plaintiff shall file a remittitur of the judgment in excess of that amount within thirty days of filing this opinion, the judgment will stand affirmed; otherwise it will be reversed.—*Affirmed* on condition.