J. W. BREEN, Appellee, v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

**CARRIERS:** Failure to Allege Interstate Character of Injury. In an action *under the state law*, by an employee for personal injury, the failure of the defending carrier to specifically plead that the injury occurred in the course of interstate commerce, and that it was, therefore, controlled by the provision of the Federal Employers' Liability Act, precludes the carrier from proving such fact:

    (a) By the cross-examination of plaintiff's witnesses; or

    (b) By the direct testimony of the carrier's own witnesses.

SALINGER, J., dissents as to clause (a).

**WITNESSES:** Cross-Examination on Non-Issuable Fact. Cross-examination is properly refused, when the matter sought to be elicited bears *solely* on an issue which the examiner was under legal duty to specifically raise, and had failed to do so.

PRINCIPLE APPLIED: An employee brought an action against a carrier for personal injury. The action was brought *under the state law*. It was the legal duty of the carrier to plead the interstate character of the injury, if it desired to raise such issue. The carrier did not so plead. The plaintiff testified that the engine on which he was injured was, at the time, run-

ning between two points wholly within this state. On cross-examination of plaintiff, the defending carrier sought to show that the two points mentioned by plaintiff constituted a part only of a continuous run from a point in Minnesota to a point in 'Missouri.

*Held*, properly rejected.

PLEADING: Negligently Delayed Amendment. An amendment is 3  properly refused when offered for the first time near the close of the third trial, and when the fact alleged and its materiality were particularly within the knowledge of the pleader, from the inception of the litigation.

'SALINGER, J., dissents as to the application made.

*Appeal from Marshall District Court.*—CLARENCE NICHOLS, Judge.

SEPTEMBER 30, 1918.

REHEARING DENIED DECEMBER 14, 1918.

ACTION for damages resulted in a verdict for plaintiff and judgment thereon. The facts are stated in a former opinion, found in 159 Iowa 537. The defendant appeals.— *Affirmed.*

*C. H. E. Boardman, F. M. Miner,* and *W. H. Bremner,* for appellant.

*Wade, Dutcher & Davis, P. W. Tourtellot,* and *C. H. Van Law,* for appellee.

LADD, J.—The plaintiff's assignor, Myles Kelleher, was seriously injured, September 29, 1908, while acting as engineer, in consequence of the breaking of the side bar of a locomotive, when in operation.

1. CARRIERS: failure to allege interstate character of injury.      This action was begun August 10, 1910, and the first trial was concluded October 13, 1911, by the entry of judgment against the defendant. On appeal, this judgment was reversed, May 14, 1913. *Breen v. Iowa Cent. R. Co.,* 159 Iowa 537.

The cause was again brought on for trial, September 30, 1913, and as, in the course of the cross-examination of Kelleher, evidence was elicited tending to show that the train of which he was engineer at the time he was injured, was engaged in interstate commerce, the defendant, after the introduction of all the evidence, moved that the jury be directed to return a verdict for defendant, on three grounds: (1) Variance between the allegations of the petition and proof; (2) the bar of the statute of limitations; and (3) the invalidity of the assignment of the cause of action. Thereupon, plaintiff moved that all evidence tending to show that either plaintiff or defendant was engaged in interstate commerce at the time of the injury be stricken. The defendant resisted this motion, and it was overruled, as was also the motion that the jury be directed to return a verdict for the defendant.

A verdict was returned for plaintiff. Thereupon, defendant's counsel filed a motion in arrest of judgment, a motion for judgment *non obstante veredicto,* and a motion for new trial. Resistance was interposed, and the court overruled the first two motions, and sustained that for new trial.

In its opinion, the court pointed out that the petition stated a cause of action solely under the state law; that the plaintiff's proof in connection with defendant's cross-examinations developed a case solely under the Federal law; and therefore, plaintiff not only had not made out a case, under the pleadings, but had conclusively shown that he had none, the judge observing:

"The question of the variance of the plaintiff's evidence from the plaintiff's pleadings is not a question of pleading. It is a question that can arise for the first time after the plaintiff has introduced his evidence. If, when the evidence is in, it establishes, not the cause of action counted upon in the petition, but a different cause of action, the defendant

can then raise the question in a motion to direct the jury; and that is the first time that the question can be properly raised. In the case at bar, the defendant offered no testimony, and, immediately upon the testimony being concluded, raised the question that the suit was one brought under the laws of the state, whereas the undisputed proof established that the cause of action was, in fact, based, and should have been brought under, the Federal Employers' Liability Act."

The third trial came on January 13, 1914, in the course of which Myles Kelleher testified, in substance, that the train had been hauled by his engine from Albia to Marshalltown (wholly within this state), and other matters. Counsel for defendant undertook to develop, on cross-examination, that the train was a through train, from St. Louis, Missouri, through Iowa, to St. Paul, Minnesota; but objections as not cross-examination were sustained. It did not appear, when all the evidence of plaintiff had been adduced, that Kelleher was engaged in interstate commerce when injured.

The conductor on the train was called by defendant, and this question propounded:

"Tell the jury where that train was coming from and where it was going to,—this train that Myles Kelleher, as engineer, was operating that night."

An objection "as incompetent, immaterial, and irrelevant to any issue in this case, no issue upon that question presented by this interrogatory," was sustained.

Thereupon, defendant filed an amended and substituted answer, putting in issue the negligence alleged, the validity of the assignment of the claim to plaintiff, and pleading assumption of risk, as theretofore, but for the first time alleging that Kelleher, at the time of the injury, was engaged as locomotive engineer in pulling a passenger train, an interstate load; that the rights and liabilities of Kelle-

her and defendant are governed by the Federal Employers'
Liability Act; and that claim thereunder was barred by
Section 6 of said act (36 Stat. at L. 291, Ch. 143). Plain-
tiff moved to strike the portions pleaded for the first time;
and, though defendant resisted, the motion was sustained.
The jury again returned a verdict, on which judgment was
entered.

This appeal presents three questions: (1) Whether the
court erred in not permitting defendant to show, on cross-
examination of plaintiff's witnesses, that Kelleher, when
hurt, was engaged in interstate commerce; (2) whether
there was error in not permitting the defendant to show, by
way of defense, that Kelleher and it were then so engaged;
and (3) whether the court erred in striking the portion of
the amended and substituted answer alleging that defend-
ant and Kelleher were then so engaged, and pleading the
statute of limitations.

I.   Kelleher, as well as the fireman, testified, on di-
rect examination, that the engine was operated, on the
day of the injury, in hauling a passenger train from Mar-
shalltown to Albia, and that the accident
occurred on the return trip, about one and
one-half miles before reaching Marshall-
town. On cross-examination, the witness was asked ques-
tions calculated to elicit information as to whether the
trains being hauled were through trains from St. Paul,
Minnesota, to St. Louis, Missouri, and whether some of the
cars had come or were being taken across state lines. Ob-
jection as not proper cross-examination was sustained. It
is manifest that answers to these inquiries would throw no
light upon the happening of the injury nor the cause there-
of nor the responsibility therefor, and would not be per-
tinent to any issue in the case; and the only purpose of the
inquiries was to inject a new issue, not pleaded by either
party. That trains may have been hauled over this railroad

2. WITNESSES:
cross-examina-
tion on non-
issuable fact.

from St. Paul to St. Louis, or that the train in question may
have been on its way between such points, tended in no
manner to throw any light upon the particular accident
complained of, or the relationship of the parties to each
other, and did not cast any doubt upon the undisputed tes-
timony that it was being hauled from Marshalltown to
Albia.   Cross-examination may well be limited to the facts
brought out in the examination in chief, and pertinent to
the issues involved, when not resorted to for impeaching
purposes; and we are of the opinion that the objections in-
terposed were rightly sustained.   The situation in a case
like this is peculiar; for there are two possible remedies for
the same injury, depending solely on the relations of the
parties to interstate commerce.   Both remedies are admin-
istered by the same court, and it is important that these
remedies shall be so administered that one may not be made
a pitfall for, or played by ingenious counsel against, the
other.   If, in an action under the state law, the defendant
does not raise the issue that the parties were engaged in
interstate commerce at the time, rulings on the admissibili-
ty of evidence are to be made as though that issue was not
involved.   If, however, facts bringing the alleged injury
within the Federal Employers' Liability Act are pleaded,
then, of course, such issue is to be taken into account in
limiting the range of cross-examination.   There was no
error.

II.   Nor might defendant show affirmatively, as a de-
fense against the claim for damages alleged in the petition,
in the absence of so pleading, that the engineer and the com-
pany were engaged in interstate commerce at the time of
the injury.   We so ruled in *Bradbury v. Chicago, R. I. & P.
R. Co.*, 149 Iowa 51; and nothing to the contrary is to be
found in the decisions of the Supreme Court of the United
States.   In *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S.
156 (57 L. Ed. 1129), notwithstanding suit was brought un-

der the state law, "when the evidence was adduced, it developed that the real cause was not controlled by the state statute, but by the Federal statute. In short, the case pleaded was not proved, and the case proved was not pleaded." The decision rests on this ground, as does *St. Louis, I. M. & So. R. Co. v. Hesterly*, 228 U. S. 702 (57 L. Ed. 1031), and *Toledo, St. L. & W. R. Co. v. Slavin*, 236 U. S. 454 (59 L. Ed. 671). This is tantamount to saying that, as the provisions of the Federal Employers' Liability Act supersede the state statutes, as to injuries suffered by employees while engaged in interstate commerce, there was a fatal variance between the pleading and the proof. In none of these decisions is there to be found any intimation that the issues to be determined are to be made otherwise than in accordance with the practice which obtains in the state courts.

In *Atlantic C. L. R. Co. v. Mims*, 242 U. S. 532 (61 L. Ed. 476), the decisions cited were construed as stated. There, the cause of action pleaded was under the state law, and at the second trial, after plaintiff had rested her case, defendant for the first time tendered evidence tending to prove that the train which the deceased was in the act of approaching to inspect, when he was killed, was engaged in interstate commerce, and that deceased also was so engaged. This evidence was rejected, as coming too late, and as "not relevant to any issue tendered by the pleadings in the case. No application was made for leave to amend the answer by adding the claim under the Federal law." With reference thereto, the court, speaking through Clarke, J., said:

"The practice differs in the courts of the various states as to what testimony may be introduced under 'a specific denial,' such as was filed in this case, and the Supreme Court of South Carolina, while recognizing fully the ruling character of the Federal Employers' Liability Act, when the facts making it applicable are properly pleaded, yet, up-

on full and obviously candid and competent consideration, decided, as we have seen, that, under the settled rules of pleading in that state, the evidence tendered was not admissible. The essential justice of this decision, which is the fundamental thing, commends it to our favor. * * * To become the basis of a proceeding in error from this court to the Supreme Court of a state, 'a right, privilege, or immunity' claimed under a statute of the United States must be 'especially set up and claimed,' and must be denied by the state court. Rev. Stat. § 709, Judicial Code, § 237 (36 Stat. at L. 1156, Ch. 231, Comp. Stat. 1913, Section 1214). This means that the claim must be asserted at the proper time, and in the proper manner, by pleading, motion, or other appropriate action, under the state system of pleading and practice (*Mutual L. Ins. Co. v. McGrew*, 188 U. S. 291, 308 [47 L. Ed. 480, 484, 63 L. R. A. 33, 23 Sup. Ct. Rep. 375]) ; and upon the question whether or not such a claim has been so asserted, the decision of the state court is binding upon this court, when it is clear, as it is in this case, that such decision is not rendered in a spirit of evasion, for the purpose of defeating the claim of Federal right. *Central Vermont R. Co. v. White*, 238 U. S. 507 (59 L. Ed. 1433, 35 Sup. Ct. Rep. 865, Ann. Cas. 1916B, 252, 9 N. C. C. A. 265) ; *John, Guardian, v. Paullin*, 231 U. S. 583 (58 L. Ed. 381, 34 Sup. Ct. Rep. 178) ; *Erie R. Co. v. Purdy*, 185 U. S. 148 (46 L. Ed. 847, 22 Sup. Ct. Rep. 605) ; *Layton v. Missouri*, 187 U. S. 356 (47 L. Ed. 214, 23 Sup. Ct. Rep. 137)."

The court then pointed out that the decisions heretofore cited proceeded on the theory that the evidence that the parties were engaged in interstate commerce had been received without objection or had been held by the state courts to have been properly received, and added:

"While it is true that a substantive Federal right or defense duly asserted cannot be lessened or destroyed by a state rule of practice, yet the claim of the plaintiff in error

to a Federal right not having been asserted at a time and in a manner calling for the consideration of it by the state Supreme Court under its established system of practice and pleading, the refusal of the trial court and of the Supreme Court to admit the testimony tendered in support of such claim is not a denial of a Federal right which this court can review."

The writ was thereupon dismissed. The trial court, then, did not err in sustaining objection to the proffered testimony.

III. Immediately upon the exclusion of evidence tending to show that Kelleher, when injured, was engaged in interstate commerce, tendered by defendant on February 15, 1914, the latter filed amended and substituted answer, which repleaded the averments of the answer as previously amended, and, for the first time, facts bringing the injury within the Federal Employers' Liability Act, the bar of the statute of limitations thereunder, and the invalidity of the assignment. On motion, this was stricken, as coming too late.

3. PLEADING: negligently delayed amendment.

This amendment pleaded for the first time this defense; and, unless *Bradbury v. Chicago, R. I. & P. R. Co.*, 149 Iowa 51, is to be overruled, and numerous other like rulings by this court, we should not interfere. There, the amendment stricken, pleading a like defense, was filed after all the evidence had been introduced at the first trial; here, the pleading was filed after the close of plaintiff's evidence and the partial examination of a witness in behalf of defendant, at the third trial.

In *Vorhes v. Buchwald*, 137 Iowa 721, refusal to allow an amendment changing the issues tendered after plaintiff had rested, was approved, no excuse for the delay appearing. Striking an amendment to a petition setting up a new ground of attachment after the jury was impaneled was

approved in *Emerson v. Converse,* 106 Iowa 330, there appearing no occasion for the delay. See, also, *Moyers v. Fogarty,* 140 Iowa 701, and *Allen v. North Des Moines, etc., Church,* 127 Iowa 96, where like rulings were approved.

The language of *National Horse Imp. Co. v. Novak,* 105 Iowa 157, is especially pertinent:

"There were two trials of the case, and at the conclusion of the appellants' evidence upon the last trial, defendant Novak, Sr., offered an amendment to his answer, pleading that he signed the note as surety after it had been fully executed and delivered, and that there was no consideration for his contract. The only excuse for not filing it at an earlier day was that he was unacquainted with legal proceedings, and supposed his attorneys had obtained knowledge of the facts, and had filed such an answer. The trial court refused to consider the amendment; and of this, complaint is made. While the rule is to allow amendments, and to refuse them the exception, yet the trial court is necessarily vested with a large discretion in such matters, and this court will not interfere, in the absence of a showing of legal abuse of this discretion. *Heusinkveld v. Insurance Co.,* 96 Iowa 224. There is no such showing in this case. The amendment tendered an entirely new and distinct issue, after the case had once been tried, and at the conclusion of defendant's evidence upon the second trial. No good reason appears for not filing it before that time. Indeed, it appears that defendant knew of the defense at all times, and that either he or his counsel were negligent, or that they had a 'masked battery,' which they did not uncover until the last moment. In either event, the trial court was justified in not considering it."

Though it was aware, as appears from the filing of its own motion to direct a verdict at the second trial, of the existence of the defense now urged, such a claim was not asserted in the pleadings, until after defendant had begun

the introduction of evidence at the third trial. True, defendant had succeeded in eliciting evidence, on cross-examination at the second trial, tending to show that the injured party was engaged in interstate commerce, at the time of being injured; and, as this went in without objection or conflict, it may be that a fatal variance developed. The only bearing of the incidents of that trial, however, is with respect to the propriety of allowing the amendment tendered. The court, in ruling on the motion for new trial, as seen, distinctly pointed out the necessity of such an amendment as a basis for the introduction of the evidence proffered at the third trial. Moreover, the defendant was quite as well advised, at the time of filing its original answer, as at the time of tendering evidence at the third trial, of the necessity, under the practice of this state, to plead, in order to prove, facts necessary to bring the case under the Federal law; for the opinion in *Bradbury v. Chicago, R. I. & P. R. Co.,* supra, was filed October 26, 1910, and the Federal decisions had recognized the right of state courts to prescribe their own methods of practice in all classes of cases involving Federal enactments long before that time. *Texas & N. O. R. Co. v. Miller,* 221 U. S. 408 (55 L. Ed. 789) ; *Yazoo & M. V. R. Co. v. Adams,* 180 U. S. 1 (45 L. Ed. 395).

Apparently, defendant was content to submit the issues under the statutes of the state, until it succeeded in extracting enough evidence, on cross-examination at the second trial, on which to base a claim of variance. Nor does anything appear, indicative that such amendment would have been in promotion of justice. Plaintiff's assignor was injured, not killed; and defendant could have gained no material advantage in the trial by having the claim for damages asserted under the Federal Employers' Liability Act, rather than under the state law, save the opportunity to set up the bar of the statute of limitations, and assert the

invalidity of the assignment of the cause of action to plaintiff. Neither of these went to the merits, nor was available against the cause of action alleged in the petition.

The plaintiff had the right to bring his action as he did, and violated no duty in not including allegations bringing his claim within the terms of the Federal Employers' Liability Act. Nor was he in a situation to compel defendant to include such allegations in its answer. Each prepared his own pleadings.

Whether evidence raising the variance was admissible was not touched, save in indicating that facts bringing the injury under the Federal Employers' Liability Act must be pleaded, if affirmative proof were to be introduced by the defendant. Even with this indication of the attitude of the court, the amendment was not proffered until plaintiff had rested, at the subsequent trial. No excuse for not sooner pleading is to be found in the record; and we are content in saying that the interposition of these defenses cannot be said to so vitally affect the justice of the cause as that the court must be held to have abused its discretion in not permitting them to be asserted for the first time at such period in the third trial. The allowance or refusal of amendments is within the sound discretion of the trial court, and only upon a clear showing of an abuse thereof will this court interfere. There was not such a showing in this case, and we may not denounce the ruling of the court in striking the amended and substituted answer from the files as erroneous. As the assignment of the cause of action to plaintiff was valid under the statutes of this state, there is no occasion to inquire whether a cause of action under the Federal law might be thus transferred, at the time the assignment was executed.

The record is without reversible error, and the judgment is—*Affirmed.*

PRESTON, C. J., WEAVER, EVANS, GAYNOR, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). I. After the first trial of this cause, a reversal ensued. There was a second trial. In the course of cross-examination of the person whose injuries were the basis of the suit, it was made to appear that his injuries occurred while he was engaged in interstate commerce. Thereupon, defendant moved a directed verdict, on the ground of variance, because the petition charged the injury occurred while said person was engaged in intrastate commerce. At the same time, plaintiff moved that this evidence be stricken out. Both motions were overruled. On verdict's being returned for plaintiff, a motion in the nature of one for new trial was made and sustained. The ruling pointed out there was a variance, with said cross-examination in, and that it could be availed of without pleading. The third trial ensued. There was an attempt to repeat said cross-examination. The testimony in chief was, in substance, that the person injured was injured while hauling a train from Albia to Marshalltown. The cross-examination attempted to show that, while this was so, these two Iowa towns were but a part of the train's journey, and that it was run between these two points in going from St. Louis to Albert Lea. The cross-examination was not permitted, on the ground that defendant could not show the injury occurred in interstate commerce, because it had not so pleaded. Thereupon, defendant tendered an amendment to answer, alleging that plaintiff should not recover, because his petition charged injury to intrastate commerce, when in truth it occurred in interstate commerce. A motion to strike this pleading was sustained, in effect, because it came too late.

It will not be denied the plea was a material one. The Supreme Court of the United States has bindingly settled

that, where one declares as this plaintiff did, he fails as for a fatal variance if it appear he was injured in interstate commerce. We all agree that to strike amendments is the exception. We all agree that, none the less, the striking is a matter of discretion. It is true we have decided that the exercise of such discretion will not be interfered with where issues are changed after plaintiff has rested, "no excuse for the delay appearing." Presently, I shall show why I disagree with the holding of the majority that, in this case, "no good reason appears for not filing" earlier than was done. When all is said, it is, after all, indisputable that the discretion is a judicial one. It remains to be seen whether striking this amendment can be defended as being a judicial exercise of discretion.

In effect, striking a pleading for being late is a ruling that the pleader is guilty of prejudicial laches; that he failed in some duty owing to the other party, or to the cause of justice. The striking is never a discretion exercised judicially, unless the party offering amendment is thus guilty. He must not prejudice justice. He must not use a masked battery to surprise his adversary. How did the pleading here offend in either way? In what duty did defendant fail?

In *Hinkle v. Davenport,* 38 Iowa 355, it is pointed out that counsel on one side purposely refrained, during the trial, from making suggestions in any form that the action could not be maintained in the form in which it was originally commenced, and that, indeed, counsel seemed carefully to have avoided raising any question which might create a doubt in the minds of opposing counsel of the propriety of uniting two parties plaintiff in an action for slander. It seems that the court, on its own motion, suggested that it would instruct against the plaintiff because of this misjoinder, and the complaint was made here that, in making the suggestions, the court went beyond its legi-

timate province. Let it be added we suggest, in the *Hinkle* case, that, because the question of practice was a novel and difficult one, the counsel for plaintiff seemed not to have discovered the fact that it existed, which differentiates the case before us, in that in it, counsel for plaintiff, of course, knew claim had been made that their case must fall unless their petition was so amended as that certain proof did not create a fatal variance. As to practitioners who did not know what was threatening, we said, in the *Hinkle* case:

"The law allows a party to avail himself of the mistakes of his opponent, but neither law nor morals allows him to complain because mistakes are discovered."

There was no laches here, and no breach of duty, unless defendant was the guardian of the plaintiff. Both parties knew the injury had been sustained in the course of interstate commerce. If there was ever a moment when it became the duty of the defendant to plead that fact, there was not a moment when plaintiff was not at liberty to amend his petition in accordance with the known truth. I cannot conceive when it became the duty of the defendant to advise plaintiff that the latter ought to plead what he knew to be the truth. If it had no such duty, it should not be penalized for failing so to advise. In view of what had occurred at one of the trials, it cannot seriously be claimed that filing the amendment was a surprise to the plaintiff. He had been fully advised, in open court, that defendant took the position it should have a verdict because the proof varied from the petition as it stood. Certainly, it was in the interest of justice to point out that the petition stated what was untrue.

No estoppel should be based on the fact that defendant failed to tell plaintiff that, if plaintiff told the truth, he would fail to prove his case. Plaintiff might plead as he pleased, but at the peril of being told, at any time, what he knew all the time: to wit, that he had seen fit to plead a

case which could be proved only by suppressing part of the truth.

Surely, the striking cannot be justified merely by the fact that it was tendered after reversal and remand. We have reversed for disallowing amendments tendered then. *Jones v. Clark,* 31 Iowa 497. And we held, in *In re Estate of Oldfield,* 175 Iowa 118, 119, that an amendment raising new issues may be allowed after remand.

The last pronouncement on the subject in this court is *Cottong v. Zybell,* 179 Iowa 1184. He who speaks for the majority here spoke for the court in that case. It is a reversal for refusing to allow the plaintiff, after motion to direct verdict against him had been made, to avoid a fatal variance by changing his petition from one on contract for labor to one on *quantum meruit.* If it be reversible error to refuse letting the *moving party* so change his petition, it is difficult to understand why it is not reversible error to strike an amendment by a defendant, involving, in effect, no more than denying allegation in petition that injuries had been sustained in the course of intrastate traffic. If, in this case, there be no excuse for not sooner tendering this amendment to answer, there was less excuse in the *Zybell* case, where the late pleading was an amendment of the petition.

I agree that the refusal of the Supreme Court of the United States to review *Bradbury v. Chicago, R. I. & P. R. Co.,* 149 Iowa 51, works that that court will not interfere with us, whether striking this amendment is right or wrong. But that should have no bearing on our deciding whether it was right or wrong to strike the amendment.

II. The reasoning underlying the refusal of the Supreme Court to review the *Bradbury* case is well stated in the majority opinion to be that, on mere rules of procedure, the decision of the state court will be held to be binding, "when it is clear that such decision is not rendered in a

spirit of evasion, for the object of defeating the claim of Federal right." But whatever may be done with review of a decision on mere matter of procedure, I am very sure Federal review will lie where the enforcement of a right given by Federal law is blocked by an arbitrary refusal to show, on cross-examination, that the Federal right is involved. Such refusal of such cross-examination is not applying a mere rule of state procedure. In my opinion, that the Supreme Court of the United States will not review the striking off of a pleading, has no tendency to prove that refusal to allow cross-examination will not be reviewed. I think the effect of the rule established in this jurisdiction by the *Bradbury* case is that, if the plaintiff persists in a false claim that he suffered injury while engaged in intrastate commerce, that then direct evidence to contradict this claim may not be put in without apt pleading. But it is quite elementary that cross-examination will often be permitted in order to prove what might not be permitted to be proved by direct affirmative evidence. See *State v. Brooks,* 181 Iowa 874. What is proper cross-examination does not depend upon pleading by the cross-examiner. It depends on the pleadings of the party whose witness is being cross-examined, and upon the testimony to which the cross-examination is addressed. If it were otherwise, a litigant would have no right to impeach a witness without first pleading that such witness was unworthy of belief. Keeping in mind these quite elementary propositions, we reach whether the cross-examination refused here was proper. The plaintiff had pleaded that he was injured while operating between two points both in Iowa. This can have been done for one purpose only: and that, to assert he had the right to try his case under Iowa law, and was relieved from any of the provisions of the Federal Employers' Liability Act. It is conceded that, if he failed to prove this allegation, he must go out of court. To save his case, and prove his allegation,

he testified to what proved his allegation. If this were not challenged, there was an end. The effect of the majority opinion is that defendant had no right to challenge it, and that, when it was testified to for the plaintiff that his allegation of having been injured in the course of intrastate employment was true, the defendant could not inquire of him further, to ascertain whether, when all the truth, as well as the truth, was told, the allegation in the petition would be shown to be untrue. The testimony in chief, as far as it went, was true. The injury was sustained while an employee was drawing a train between two Iowa points. Standing unchallenged, it established the allegation that would keep the plaintiff in the state court. On the other hand, while true, this was but part of the truth; and if all the truth were made to appear, the plaintiff must go out of court. Suppose a civil suit for damages for assault and battery, and testimony by the plaintiff that the defendant struck him in the face. Would it require a pleading to permit cross-examination attempting to show that, while defendant did strike plaintiff in the face, it was in repelling a murderous assault then being made upon him by the plain-tiff? Mr. Wigmore says, in his second volume on Evidence, Sections 1365 to 1368, that the fundamental feature of cross-examination is that a witness, on direct examination, discloses but a part of the necessary facts; that that which remains suppressed or undeveloped may be, for one thing, the remaining and qualifying circumstances of the subject of the testimony, as known to the witness; that, while this can often be supplied or remedied by calling other witnesses, cross-examination is the better mode; that, for one thing, cross-examination immediately succeeds the direct examination, in point of time, and so the modification produced by the facts extracted is more readily perceived by the trier; that proving the same facts by new witnesses, after others of the proponent have intervened, may lose this bene-

fit; and that counsel's argument at the close might not be able to replace it. By analogy, the rule is involved that, where one party enters into a transaction, the other party may, on cross-examination, develop all of the same transaction.

As I understand it, the only avoidance by the majority is, first, that the cross-examination was rightly refused because it had no bearing on the main issue; that its only purpose was to inject a new issue, in the shape of a pitfall; and that the testimony sought bore on no more than on which of two proper remedies or court procedure the plaintiff could rely. I have said enough, as it seems to me, to indicate that the purpose was not merely to inject a new issue; that there was no pitfall about it, because the amendment but tendered what the plaintiff was fully aware might, at any time, be tendered, and what he knew, at all times, was the truth. It remains but to add that it would seem to be quite immaterial that the cross-examiner sought to show, not that the plaintiff had suffered no injury, or could nowhere recover, but only that his allegations and proof, for the purpose of recovering in the State court, were untrue, and that he must seek his remedy in another forum, and under a different law. It was material for plaintiff to plead and prove as he did do. Though he had such plea and proof, he might still fail of a recovery. Without such plea and proof, no matter how much he was entitled to recover, he could not do so in the suit that he had brought. For the purpose of testing whether cross-examination was proper, anything which, by getting the full truth out of the witness on a point where he had stated but part of the truth, would defeat his right to recover in the suit brought, is just as material and permissible as though the like cross-examination would tend to prove that he had no right to recover at all. That he had the right to go into the state court is no answer. He could recover in the state court by

pleading that he was injured in the course of interstate
commerce.  He did not have the right to invoke one of two
remedies the state court could give, by a false plea of what
employment he was injured in.  It follows defendant was
entitled to show, on cross-examination, that such plea was
false.  To do this would work, as it should, that plaintiff
should have no remedy, except such as all of the truth en-
titled him to. .