Louis J. PIERSON, Administrator, v. CHICAGO, GREAT WESTERN RAILWAY COMPANY, Appellant.

·Contributory Negligence:    JURY QUESTION:    *Railroad engineer.* Plaintiff's decedent was engineer of defendant's east-bound train, which collided with a west-bound train at F. As the trains were about to collide, decedent jumped from the engine, receiving injuries which resulted in his death. The east-bound train had a prior right over the other to the use of the

main track, and was behind time on the day of the collision. The west-bound train reached F. first, and was backing on a side track when the other struck it. The former train had then barely cleared the main track, and the switch had not been closed. F. was the regular meeting point of these trains. Under defendant's rules, the west-bound train should clear the track five minutes ahead of the schedule time of the arrival of the other. For over a mile west of F. the track is one per cent. down grade, going towards town. When the east-bound train came on this grade, decedent shut off all steam, the train then going 35 miles an hour. One mile from the place of the accident, decedent applied the full force of the air and emergency brakes, which were out of order and ineffective, though he had used them seven miles back, when they were in working order. He then signaled and hand brakes were applied. Decedent did not reverse his lever on the engine. The engine's supply of sand was exhausted. There was evidence that decedent could have seen the west-bound train before he attempted to control his own train, and also evidence that he could not have told which track the west-bound train was on until within 900 feet from it. *Held*, that the evidence was sufficient to sustain a finding that decedent was not guilty of contributory negligence.

**Evidence:** *Inadmissibility.* Evidence that the conductor of the west-bound train learned that the other train was late; that it unusually came in at a less rate of speed than it did on the day of the accident; and that it had previously come into the station when the west-bound train was doing work on the main line,—was inadmissible on the question of contributory negligence.

*Same.* Evidence that the decedent had worked with the west-bound train was immaterial as bearing on the question of contributory negligence.

*Custom.* Such evidence was inadmissible, as tending to show a custom, known to decedent, of the west-bound train to occupy the main track after the schedule time for the arrival of the other train.

*Same.* Evidence that the conductor of the east-bound train expected that the other train would be doing work on the main line when the former was late, was inadmissible, as tending to show custom, known to decedent of the west-bound train to occupy the main track after the schedule time for the arrival of the other train.

*Same.* A question as to whether, when the east-bound train was off her schedule time and the other train was on the sidetrack, it was customary for the latter to do whatever work was to be done at that station before the arrival of the east-bound train, did not call for a custom of working the west-bound train on the main track on the time of the east-bound train.

*Rules.* The admission of evidence of the railroad's rules relating to the operation of its trains was proper.

CROSS-EXAMINATION. Where the fireman who was on the engine with decedent at the time of the accident was examined as to facts only, questions on cross-examination calling for his opinions as to the manner of operating an engine were properly ruled out.

HYPOTHETICAL QUESTIONS: *Basis introduced after question is excluded.* Hypothetical questions assuming facts not found in the evidence are properly excluded, notwithstanding such facts were subsequently testified to, if, when the questions were asked, no assurance was given that such evidence would be afterwards offered.

Amendment in Trial: DISCRETION TO REFUSE. It is not error, in an action for death, to refuse to permit defendant to amend its answer at the close of the plaintiff's case, the matter being within the discretion of the court.

*Appeal from Fayette District Court.*—HON. L. E. FELLOWS, Judge.

FRIDAY, DECEMBER 20, 1901.

ACTION to recover for the death of plaintiff's intestate, caused, as claimed, by the negligence of defendant railway. There was a jury trial, resulting in a verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*A. C. Briggs, D. E. Lyon,* and *D. J. Lenehan* for appellant.

*Clements & Clements* and *Rickel & Crocker* for appellee.

WATERMAN, J.—Plaintiff's intestate, W. D. Grimes, was in the employ of the defendant company as a locomotive engineer. On the second day of February, 1898, he was operating a locomotive which was pulling a regular freight train eastward over defendant's road. At the station of Fredericksburg this train came into collision with a west-bound freight train on the same road. As the trains were about to come together, Grimes jumped from his engine, and, in so doing, received the injuries which caused his death. The train deceased was on was known as No. 74; the one with which the collision was had was No. 81. No. 74 was a superior class train, and, under the rules of defendant, had a prior right over No. 81 to the use of the main track. Train No. 74 was somewhat behind time on the day in question. No. 81 reached the station of Fredericksburg first, and was backing upon a side track when the collision occurred. It had barely cleared the main track, and the switch had not been closed, when the engine of No. 74 struck it. Fredericksburg was the regular meeting point of these trains. Under the rules of defendant company, it was the duty of those in charge of train 81 to "clear the schedule time five minutes" of train 74, unless protected by a flagman and torpedoes, as provided in rule 112. As there is no claim that No. 81 was so protected, we need not set out the last-mentioned rule in *extenso.* Train No. 74 therefore had the right of way under the rules. This is not disputed. The principal contention of appellant on the facts is that decedent was guilty of contributory negligence. It is charged that he ran his train into the station at a rate of speed in excess of 10 miles an hour, in violation of a rule of defendant company; that he knew his train was to stop at Fredericksburg, and, had he reduced the speed so as to enable him to bring it to a stand at the proper place, it would have been so under his control when he saw that train 81 was blocking the way that a serious collision could have been avoided. It is also insisted that Grimes did not,

when the danger of a collision was discovered, take proper steps to stop or check the speed of his train. The following facts are established, practically without dispute: For a little more than a mile west of Fredericksburg there is a 1 per cent. down grade on defendant's tracks, going towards the town. As Grimes' train came upon this incline, he shut all steam off the engine, the train, by force of gravity, running thereafter at a rate of speed of from 25 to 35 miles an hour. As the train went upon this incline about one mile from the switch where the accident occurred, Grimes made a service application of the air brake, which is an exertion of part of its force. Finding that this did not have the desired effect, he made an emergency application, which is an exertion of the brake's full force; and this was left turned on. This was of no material effect, for the brake was out of order. Grimes then whistled for the hand brakes to be put on, and, when he reached a point where he could see his way obstructed by No. 81, he whistled again for brakes. The brakes were applied by hand, but were insufficient to control the train, and, a collision being imminent, Grimes jumped from the engine to his death. Various opinions are given by experts as to the cause of the failure of the air brakes to serve their purpose. We need not follow their speculations. It is enough to say there was testimony from which the jury may well have found that Grimes was in no way to blame for such failure or for not knowing they were out of condition. He had used them about seven miles back, and they were then in working order. But it is said he could have seen No. 81 at the station some time before he attempted to get his own train under control. This fact is in dispute; but, if we accept appellant's version, there yet remains evidence to show that he could not have told which track No. 81 was upon until he was within some 900 feet of it, and he then gave the second signal for brakes. He knew he was to meet No. 81 at Fredericksburg. Had he seen it there before he could see which track it was upon the

fact would have called for no particular precaution on his part, for he had a right, until otherwise informed, to assume it was upon the side track. It is very strongly contended that Grimes should have adopted other means to control the speed of his train when he found the air brakes would not work, that he should have reversed the lever on the engine. The evidence is in conflict as to whether this was a proper course to pursue under the circumstances. Some witnesses say the effect of reversing the engine would most likely be to disable it. The general tenor of all the testimony is that reversing the lever would have no material effect on the speed of the train if the track was not sanded, and it is undisputed that Grimes' engine, before this time, had exhausted the full supply of sand with which it started on this trip, and from the testimony of some witnesses the jury may well have found that no opportunity was given to replenish the empty sand box previous to the accident. Furthermore, this engine was running without steam at the time of which we are speaking. To reverse the lever with no steam on could have no effect whatever. The witnesses who favored the reversal of the lever do not seem to have taken into consideration the fact that the engine was running by force of gravity only. None of them say that within 900 or 1,000 feet of an obstruction on the track, and running at the rate of speed ascribed to this train, it would have been a prudent or proper act to turn on steam and reverse the lever. But it is needless to pursue the subject further. There was evidence from which the jury could have found that Grimes was not negligent in not doing more than he did, and this finding would excuse him for not decreasing the speed of his train as he entered the town and passed over the switch.

II. Defendant requested the giving of fourteen instructions to the jury, which request was refused. It is admitted that five of these were given, in substance, as asked,

by the court on its own motion. The others are not specifically argued, so we shall content ourselves with the simple statement that there was no error in refusing them. In one way or another they present the theory of the case which we have already indicated, as held by appellant.

III. Objections were sustained to certain questions asked by defendant on cross-examination of plaintiff's witness Callahan, and of these rulings complaint is made. The rulings were correct. The witness was a fireman, and was on the engine with Grimes at the time of the accident. He was examined by plaintiff as to facts only. The questions ruled out called for his opinions with relation to the manner of operating an engine, which were not proper on cross-examination.

IV. Certain hypothetical questions asked on cross-examination of plaintiff's witness Conger were ruled out, on the objection that they assumed facts not found in the evidence. An element of the question was that the air brakes were in working order immediately after the accident. While this fact was later testified to by witnesses for defendant, at the time the rulings were made of which appellant complains no such fact appeared in the case. It is elementary that a hypothetical question may properly include only facts which there is some evidence tending to prove. *Meeker v. Meeker,* 74 Iowa, 352; *Hall v. Rankin,* 87 Iowa, 261; Rogers, Expert Evidence, section 25. If, perhaps, it may have been proper for defendant to embrace in its question a fact which it gave assurance it would offer evidence of, still the ruling was correct, for no such assurance was given the court by counsel.

V. On cross-examination, one of plaintiff's witnesses, the conductor of No. 81, was asked questions tending to show that he learned No. 74 was late; that it usually came in at a much less rate of speed than it maintained on the day in question; that it had previously come in to the station when train No. 81 was doing work on the

main line. This evidence was shut out, and properly. The argument made on the part of appellant is that the evidence was important, as bearing on the contributory negligence of Grimes. But, as the jury must have found that Grimes exercised proper care in his attempts to control his train and avoid the collision, the facts, if shown, could have had no effect. If Grimes had made no effort to control his train, these facts would have had a bearing, as tending to show that he should have tried to do so. Or perhaps it would have been admissible to show a custom, known to Grimes, of No. 81 to occupy the main track after the schedule time of No. 74, as tending to show that as soon as Grimes saw a train was at Fredericksburg he should at once have attempted to lessen the speed of his train, because he would have reason to believe it might be on the main track. But these questions do not call for a custom. Neither does a question asked of defendant's witness Burns, the conductor of No. 74, which was ruled out, and of which ruling complaint is made. That question asked Burns to say whether, when No. 74 was late, he (Burns) expected No. 81 would be doing work on the main line. If we assume that it was meant that No. 81 would be working on the main line on the time of No. 74, still it calls only for Burns' expectation, and not for any fact upon which such expectation was based, nor for any knowledge on the part of Grimes. Neither does the following question, asked by defendant of a witness, Andrews, call for a custom of working train No. 81 on the main track on the time of train No. 74: "State whether or not, when train No. 74 was off her schedule time and train No. 81 was on the side track, it was customary for train No. 81 to do whatever work was to be done at that station before the arrival of No. 74." It will be noticed nothing is said about using the time of train No. 74 for the work.

VI. A witness was asked by defendant whether Grimes had ever worked with train No. 81, and the court

sustained an objection to it. It seems clear that anything Grimes may have done with that train could not affect this case unless it was in accord with a custom. If it was customary, his knowledge of it could be shown, whether he ever worked with the train or not.

We have so extended this opinion with a discussion of questions of no general interest to the profession that we shall dispose briefly of two other matters of like character which are discussed by counsel. There was no error in admitting in evidence the rules of defendant relating to the running of his trains; nor was there reversible error in refusing to permit defendant to amend its answer at the close of plaintiff's case. While the rule is to permit amendments,—to refuse them the exception,—the trial court has a certain discretion in such matters, and we will not interfere unless it is abused. Delay in pleading should not be encouraged. We approved a similar ruling of the trial court under like circumstances in *Thoman v. Railroad Co., 92 Iowa, 196.*

We discover no error in the record, and the judgment is AFFIRMED.