R. F. OSBORNE and R. E. OSBORNE, Operating as a Partner-
ship Firm Under the Firm Name of Ainsworth Land
Company, Plaintiffs and Appellants, v. ELBERT J. DAN-
NATT, Defendant and Appellee.

Pleadings: CHANGE IN TITLE: WAIVER OF OBJECTION. By the filing of
1  a demurrer and motion to strike directed against certain counts of
   an amended and substituted petition, and in going to trial on the
   issues tendered in another count, the defendant waived the right
   to subsequently object that the amended petition named a partner-
   ship as plaintiff rather than one of the individual members of the
   partnership, as in the original petition.

Real property: COMMISSION CONTRACT. Where the law of a state re-
2  quires that a broker's contract for the sale of land shall be in
   writing and signed by both parties, a postal card describing the
   property and stating the terms of sale, though signed by the broker
   to whom it is addressed, is not a contract within the meaning of
   the law.

Same: PLEADINGS. A petition on a commission contract providing for
3  a sale within a specified time, which fails to plead performance
   within that time or to set up facts which will avoid the effect of
   the provision, is demurrable.

Real property: COMMISSION CONTRACT: VALIDITY. When a commission
4  contract for the sale of land is void in the state where it was exe-
   cuted, because not signed by both parties as required by the law of
   that state, it is void everywhere, and no subsequent agreement or
   act based upon the contract can give it validity.

*Appeal from Woodbury District Court.*—HON. JOHN F.
OLIVER, Judge.

MONDAY, DECEMBER 14, 1914.

ACTION on an alleged contract for broker's commission
in the sale of real estate. Defense that the contract was not

in writing, and void under the law of Nebraska, where made. Judgment for the defendant, and plaintiffs appeal.—*Affirmed.*

*A. Van Wagenen,* for appellants.

*L. F. Sutton,* for appellee.

WITHROW, J.—I. This action was commenced in the district court in the name of R. F. Osborne, plaintiff. Answer was filed, and trial had, but before decision the cause was continued on plaintiff's motion, and leave was granted to file an amended and substituted petition, which was done. This petition was brought in the name of the plaintiffs as they appear on this appeal, and contained four counts, stating the same cause of action in different ways. A demurrer to counts 1 and 2 was sustained, and count 4 was stricken as being substantial repetition of count 3. To these rulings exceptions were taken. Answer was filed to count 3, and the cause was tried by the court, resulting in a judgment for the defendant.

A motion to dismiss this appeal is before us on the ground that, since the commencement of the action, there has been a change in its title. The motion does not require

1. PLEADINGS: change in title: waiver of. objection.

extended consideration. Without objection the change in the title of the cause was made in the lower court, the petition so entitled was made the object of demurrer and motion, and issue taken on one count. By proceeding to trial the parties adopted the case as it was then entitled, by such act waiving any objections which might have been made on that account, and it is now too late to question it.

II. The action was to recover a broker's commission in effecting a trade of real estate. The first count was upon an alleged written contract to pay 2 per cent. commission on the

2. REAL PROP- ERTY: commis- sion contract.

value of four farms, in case sale was made. That which it is claimed constitutes the written contract consists of a postal card, which was in substance but an advertisement and descrip-

tion of the land, with terms bearing the printed signature of the defendant, sent to R. F. Osborne, and to which, upon receipt of it, the plaintiff caused to be affixed the signature of the Ainsworth Land Company. The law of Nebraska requires brokers' contracts for the sale of real estate to be in writing and signed by both parties; and that which is claimed as its execution was done by plaintiff in that state, in which was the residence and place of business of the plaintiffs. The evidence does not show that defendant was ever advised that the plaintiffs had signed the card, nor do we think it shows that it was sent to Osborne to be signed as a contract, but only as a description of the land, and terms of sale, at the most to be used as data from which a written contract might be prepared, and such was not done.

The telegrams pleaded and relied upon as showing ratification of the printed signature do not do so; nor could they be construed as so doing, in the absence of averment that the defendant was advised that the plaintiffs had signed the alleged contracts, even were such signing sufficient to bind the defendant in an offer made to R. F. Osborne. That which would govern as to ordinary contracts, or even such as come within the provisions of the statute of frauds, which requires only the signature of the party to be charged, cannot apply when a statute, which is governing upon the parties as a matter of public policy, requires that both shall sign the contract.

The ruling upon the demurrer was correct as to that ground, and as to count 1 for the further good reason that

3. SAME: pleadings.     performance within sixty days, as provided, was not averred, nor matter pleaded which relieved against such provision.

The motion assailed count 4 of the amended and substituted petition on the ground that it was but repetition of count 3. It was sustained. While exception was taken, we find no error assigned on that ground.

III. The cause was tried on the issues raised by count 3

of the petition and the answer, with judgment against plaintiffs. In that count it is averred that prior to September 1,

4. REAL PROP-
ERTY : commis-
sion contract :
validity.

1910, the plaintiffs acted as agent for Dannatt, and that the defendant agreed with the plaintiffs that, on account of his large business, the plaintiffs should receive a commission of 2 per cent. on the purchase price on all lands sold by the defendant or purchased by him; that this oral agreement was made in Nebraska, and with reference to Iowa lands belonging to the defendant; and that it was contemplated by both parties, and so understood between them, that the performance of such service should be in Iowa, and that the contract was an Iowa contract, and to be governed by the laws of this state. They state that on or about September 1st they received a postal card offering the Iowa lands of defendant for sale and a commission of 2 per cent. to any person who would sell the same, and later they received another card making like offers, with slight changes in the prices.

Plaintiffs say that in pursuance of the contract they procured a purchaser, who paid part in cash and part in trade, and took over all the lands described on the postal card, and the valuation as agreed upon was $91,000. Commission of $1,820 is claimed to have been earned, and judgment for that amount is asked. By amendment to the petition it is pleaded: That plaintiffs brought the defendant and Klopping Bros. together on a deal, and they failed to make a trade. That upon such failure the defendant handed to one of the plaintiffs a postal card, designated as Exhibit B, being one of the cards to which we have referred, and told him to "go after the Kloppings, get them to come back, and we will make a deal."

The answer of defendant denies an agreement to pay plaintiffs the commission, pleads the statute of Nebraska, which requires the contract between broker and owner to be in writing, subscribed by both, and avers that, whatever the talk or agreement between the parties, it was void under the

laws of the state where the alleged contract was made, and could not be made valid by an oral statement made in Iowa. Defendant pleads that plaintiffs did not sell the real estate or make an exchange thereof on the terms and conditions offered by the defendant, but the sale and exchange was made on entirely different terms and with the express understanding that no commission was to be paid.

IV. The evidence, which, as we understand from the record, was that which was introduced upon the first trial, is in substance: That R. F. Osborne, a member of the plaintiff partnership, is a real estate dealer residing at Ainsworth, Neb. That he had a conversation with defendant in Nebraska in 1909 as to the sale of real estate. That defendant said he would pay 2 per cent. on anything plaintiffs bought or sold for him. That plaintiffs wanted a written contract, and that defendant said that when he returned to his home in Sioux City he would send the price numbers on a card. His price was $110 per acre for seven hundred and eighty acres. Later defendant sent the postal card. That plaintiff R. F. Osborne took up the matter of a sale or trade with Klopping Bros., the owners of a 2,800-acre ranch in Cherry county, Neb., upon the direction of defendant in a letter which has been lost, directing him to "get busy and see if you cannot sell or trade this land for some good ranch land." Following this was correspondence between the parties, and in February Dannatt went with Osborne to see the Klopping land. Negotiations continued, and in May they again visited the land. The dealings between the Kloppings and Dannatt were entirely on the basis of a trade, the matter of valuations being the main subjects of difference. On June 16th, after the efforts of the parties had brought them no nearer together than a difference of $6,800 between them, the defendant telegraphed Osborne that he would divide the difference, but would "pay no commission on trade; pay you regular commission exclusive agency to sell Klopping ranch at fifteen and one-half; close trade quickly." On June 20th another telegram was sent to Os-

borne by Dannatt, in the name of Mary J. Dannatt, his wife, stating, among other things, ''Close trade quickly; no commission on one hundred ten per acre.'' And in a letter of the same date the defendant wrote Osborne fully as to what should be done to close the trade. In this letter he said, ''I pay you no commission on house or seven hundred and eighty-four acres, but will list the three thousand four hundred and forty acres with you at $15.50,'' on terms of payment which were stated. Shortly after the sending of the telegram and letter, the parties met in Sioux City. Osborne testified that Dannatt said there had been a mistake; that the homestead which was to be conveyed with the ranch was to be $2,500 instead of $5,000, to which Osborne replied that he had written and wired Dannatt that the Kloppings demanded $5,000 for it, and that upon defendant's direction he had closed the contract on that basis. Osborne also testified: That he then asked Dannatt what he meant by wiring that he would pay no commission; and that he answered, ''Never mind the commission; we have an understanding about that.'' That he had told his wife there would be no commission, and she then consented to the trade. Another witness testified to substantially the same, but this was wholly denied by Dannatt. At one stage in the negotiations, as Osborne testified, the parties Klopping and Dannatt were together in Sioux City, and parted with all apparently ended; that, at the request of Dannatt, he (Osborne) took up the matter again, and that the trade was made. After the deal was closed, Osborne asked Dannatt for his commission, but it was not paid to him.

V. The plaintiffs, appellants, in the count upon which trial was had, relied upon an oral contract to be performed in Iowa, in the sale of Iowa lands. The argument on this appeal is more to the question that there was a written contract in compliance with the laws of Nebraska. Whatever its character, written or oral, the only agreement which was definite as to the terms pleaded and relied upon by the appellants as the basis of recovery was, as we find from the record,

made in Nebraska. If not in writing, subsequent directions as to what should be done, although in some instances given in Iowa, did not go to the extent of fixing the terms of a new and independent agreement, but related alone to the carrying out of the Nebraska agreement. By the terms of the statute of that state, any agreement such as is relied upon here is void, unless duly signed by both parties to it. Being void, no subsequent agreement or act based upon it could give it validity. 9 Cyc. 562, and cases cited. And if not in writing, and for that reason void, the fact that it was to be performed in Iowa would not relieve the parties from the effect of the statute. While it is a general rule that the validity, nature, obligation, and interpretation of an enforceable contract is to be governed by the laws of the place of performance, it is also settled that, if the contract is void or illegal by the law of the place where made, it will be held void and illegal everywhere. *McDaniel v. C. & N. W. Ry.*, 24 Iowa, 412; Story's Conflict of Laws, section 243; *Kanaga v. Taylor,* 7 Ohio St. 134 (70 Am. Dec. 62); *Brown v. Finance Co.* (C. C.) 31 Fed. 516; *Hyde v. Goodnow,* 3 N. Y. 266.

We are therefore brought to the conclusion that, reliance being placed upon an oral contract shown to have been made in Nebraska, the trial court was right in holding that plaintiffs could not recover. While under the facts there is much to sustain the claim of moral rights made by the appellants, in that services of value were rendered for which there should be compensation, we must determine this action, brought at law, by the rules which apply to such cases, both as to the fact issues passed upon by the trial court and the application of settled principles of the issues drawn.—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.