BROWN AND BRAMMER, Plaintiffs, Appellants, v. WM. PEARSON COMPANY, LTD., et al., Defendants, Appellees.

CONTRACTS: Validity—Lex Loci Contractus—Lex Loci Rei Citæ—
1 Nebraska Real Estate Commission Act. A contract void in the state where made and to be performed is void everywhere.

PRINCIPLE APPLIED: The Nebraska Real Estate Commission Act declares void all oral contracts for a commission for sale

of lands. Plaintiff, a resident of Iowa, was orally promised in Nebraska a commission if he would furnish a purchaser for defendant's Canadian land. Plaintiff produced at Omaha the prospective purchaser who was taken by defendant to Canada and made the purchase. *Held*, (a) contract invalid and (b) the invalidity was not avoided by the doctrine of *lex loci rei sitæ*.

**BROKERS:** Commissions—Statute of Frauds. An agency contract for the sale of land is not one which affects real estate in a legal sense.

    PRINCIPLE APPLIED: (See No. 1.)

**BROKERS:** Commissions—Statutes Requiring Written Contract— Sufficiency of Evidence. Evidence in the form of letters reviewed and held insufficient to establish a written contract for commissions as required by the Nebraska Real Estate Commission Act.

**PLEADINGS:** Amendments—Rejection—Discretion of Court. The striking of an amendment at the close of the trial, pleading a written contract instead of the oral one formerly pleaded, because filed too late, is held in instant case to have been within the discretion of the court.

*Appeal from Taylor District Court.*—Hon. Thos. L. Maxwell, Judge.

Saturday, February 13, 1915.

Action by a real estate agent to recover a commission under and by virtue of an oral contract. The answer was a general denial and an affirmative plea that the alleged oral contract was entered into in the state of Nebraska and was invalid under the statute of that state. At the close of the evidence there was a directed verdict for the defendants and the plaintiffs appeal.—*Affirmed.*

*Jennings & Mattox, W. M. Jackson,* for appellants.

*Tobin & Jensen, G. B. Haddock,* for appellees.

Evans, J.—The plaintiffs were partners engaged in the real estate business in Shenandoah. There are two defend-

ants, Wm. Pearson Company and R. S. Dewar. The Pearson
Company is a corporation organized under the laws of Can-
ada and its principal office is and was located at Winnipeg.
The business of the company was to deal in Canada lands and
doubtless to unload them upon credulous Americans. R. S.
Dewar was its superintendent of agencies and he had an
office at Omaha, Nebraska. The contract sued upon is alleged
to have been entered into by means of a conversation between
the plaintiff Brown and the said Dewar. It occurred at the
office in Omaha. Brown was contemplating the acquiring of
an agency to procure purchasers for the Pearson Company.
He desired that such agency should include several counties
in southwestern Iowa. The desired territory had already
been given to other agents, but the possibility was open to
the plaintiffs to become sub-agents in some of such territory.
One of the agents who had already secured the principal part
of the territory desired by the plaintiffs was McKinney. Prior
to this conversation at Omaha, there had been some corre-
spondence between Brown and McKinney. A contract of sub-
agency under McKinney was discussed. No contract was
entered into, neither were the negotiations terminated. Some
investigation of the Canada lands was desired by the plain-
tiffs. On the other hand, McKinney would be the other party
in interest in a contract of sub-agency. The claim of the
plaintiffs at this point is that notwithstanding that no general
contract had been entered into by the plaintiffs for any par-
ticular territory, a special contract was then and there entered
into for one customer out of McKinney's territory; that
Brown said to Dewar that he had a customer who might buy
Canada land; that he would bring such customer to Dewar
in time for the next excursion; that Dewar agreed to pay
him one and one-half dollars an acre as commission for any
of their lands which such customer should buy; that on June
7th following Brown brought his customer, Nugent, to the
office of Dewar at Omaha and introduced him as a prospective
buyer; that Nugent joined Dewar's excursion and joined

McKinney at Minneapolis and afterwards bought 640 acres of land, whereby the plaintiffs claim a commission of $960. As against this, it is made to appear for the defendants that Nugent was himself a land agent, or that he desired to be one; that he desired territory as such agent and later procured some; that it was made to appear to McKinney by Brown and by Nugent that Nugent was or would be associated with the plaintiffs and that any arrangement made with Nugent would be satisfactory to the plaintiffs; that Nugent purchased a section of land, but as a condition of such purchase, he insisted upon the allowance of one and one-half dollars an acre out of the purchase price as the equivalent of a commission; that such allowance was made to him. This contention is supported by the testimony of Nugent upon the trial. It has some support also in Brown's letter of introduction of Nugent to McKinney. The foregoing is a sufficient statement of the salient facts pro and con to indicate that the case presented an issue of fact for the jury unless the oral contract sued on was invalid under the Nebraska statute, which was pleaded by the defendants. To this statute, therefore, we direct our attention.

I. The statute relied on is Sec. 10856, Cobbey's Annotated Statutes of Nebraska, and is as follows: "Every contract for the sale of lands, between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent, and such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent."

1. CONTRACTS: validity: *lex loci contractus: lex loci rei citae:* Nebraska Real Estate Commission Act.

This statute has been repeatedly sustained by the Supreme Court of that state. The reasons underlying such statute have been stated by such court as follows:

"The reasons which impelled the legislature to pass that act are well known to the courts and the profession generally.

Innumerable suits were being instituted from time to time by agents and brokers after the owners of land had sold the same, claiming a commission on the ground that they had been instrumental in securing the purchaser; and in many cases the owners of the land were compelled to pay double commission on account of such claim. In order to prevent such disputes, and protect property owners under just such cases as the one we are now considering, the legislature passed this act." *Covey v. Henry,* 98 N. W. (Nebr.) 434.

"The section quoted would seem to be too clear to require interpretation. The undoubted purpose of the legislature was to remedy an evil which had grown up in this state, as shown by innumerable actions brought by real estate brokers against the owners of real estate to enforce the collection of commissions for negotiating sales which in many instances were never completed." *Danielson v. Goebel,* 98 N. W. (Nebr.) 819.

"The foregoing section has been before this court several times and the uniform holding has been that there can be no recovery by a real estate agent or broker on a verbal contract for the sale of real estate." *Barney v. Lasbury,* 107 N. W. (Nebr.) 989.

Similar holdings also have been made by such court in the following cases: *Allen v. Hall,* 89 N. W. (Nebr.) 803; *Spence v. Apley,* 94 N. W. (Nebr.) 109; *Baker v. Gillan,* 94 N. W. (Nebr.) 615; *Blair v. Austin,* 98 N. W. (Nebr.) 1040.

Giving effect to this statute according to its terms, there was no completed and valid contract between Brown and Dewar.

The appellant presents in argument several reasons why such statute should not be deemed as controlling or as applicable to the case and we turn to the consideration of this contention.

II. The first general proposition urged is that this

statute, being analogous to if not a part of the Nebraska statute of frauds, is a remedial statute and is not binding upon the courts of this state. The contract sued on was concededly made at Omaha, Nebraska, and at no other place. It was therefore necessarily a Nebraska contract. If the contract was valid in Nebraska, it must be held valid here. If it was not valid in Nebraska, then there was no contract in Nebraska. If the contract was invalid when and where made, when and where did it become valid? Was the contract rendered valid simply by bringing an action upon it in Iowa? Subject to some exceptions, the general rule is that the validity of a contract in its inception is to be determined by the law of the place of its making. This rule is sustained by the great weight of authority and we are unequivocally committed to it. *Nichols & Shepard Co. v. Marshall,* 108 Iowa 518; *Hazel v. Chicago, M. & St. P. R. Co.,* 82 Iowa 477.

One of the exceptions to this rule is that where the contract involves an interest in real estate, its validity must be determined according to the law of the state where such real estate is situated. This requirement is an incident of the sovereignty of the state and of its necessary jurisdiction over its own domain. Whether the same exception would obtain where the contract involves an interest in specific personal property, we need not inquire. This action is transitory and *in personam* only.

Another exception is that under some circumstances a contract may be entered into in one state to be performed in another state. In such case, if the parties so intended, the validity of the contract will be determined under the law of the state where it is to be performed. An illustration of this exception will be found in *Arnold v. Potter,* 22 Iowa 194. In that case, a promissory note was executed and delivered in Massachusetts by a resident of Iowa as payor to a resident of Massachusetts as payee, whereby the payor agreed to pay 10% interest. This rate was legal in Iowa and usurious in Massachusetts. It was held that it was competent for the

parties under those circumstances in good faith to contract with reference to the law of Iowa and to bind themselves accordingly. Appellant contends for the application of such rule in the case at bar. The argument is that the contract sued on was performed in Canada and that the law of Canada will be presumed to be the same as that of Iowa, in the absence of other proof. The premise of fact, however, is not sustained by the record. Brown's contract, according to his showing, was to furnish a customer. He produced Nugent at Omaha. The agents of the company took him to Canada and there sold him the land. But in buying such land, Nugent was not acting for Brown. He was not performing Brown's contract. Brown had performed his own contract by producing his customer at Omaha. He had fully performed it. Nothing more could be required of him to entitle him to the benefits of his contract. True, his delivery of the customer at Omaha did not necessarily entitle him to his commission. This was not because of any failure of performance on his part but because by the very terms of his contract his commission was still subject to the contingency of a sale by the company to the purchaser. If the contract could be enforced here on the ground thus urged, it could be enforced in Nebraska on the same ground. In the *Arnold* case, *supra,* the validity of the contract was sustained here not on the ground that the courts of Iowa would sustain as valid a contract which was invalid in Massachusetts, but on the theory that it was competent under the circumstances shown for the parties to contract in Massachusetts and to incorporate into their contract the Iowa law as to rate of interest and that such contract was valid not only in Iowa but in Massachusetts as well. What is plain in the case before us is that the plaintiff could not have prevailed therein in the courts of Nebraska. *Osborne v. Dannatt,* 167 Iowa 615.

There is some contention in the argument that the contract in question created an interest in the land within the

meaning of the statute of frauds and that for that reason the
law of the place of the land will obtain.   It
is well settled, however, that an agency con-
tract for the sale of land is not one which
affects real estate in the legal sense.  *Bannon v. Bean,* 9 Iowa
395; *Goldstein v. Scott,* 78 N. Y. Supp. 736.

*2.  BROKERS : com-
missions : stat-
utes of frauds.*

The case last cited involved a statute of New Jersey sim-
ilar to the one under consideration herein.   It was held that
its validity must be determined under the law of New Jersey.
It is also urged that performance by the plaintiffs took the
case out of the operation of the statute.   If the statute had
provided that part performance would avoid it, the conten-
tion at this point could be conceded.   Such proviso is con-
tained in many statutes of fraud as to some subjects.   There
is no such provision in the statute before us.   If there were,
it is manifest that it would destroy entirely the real purpose
of the statute.   No agent sues for a commission except upon
the claim that he performed his part.   It is true that the
Supreme Court of Nebraska has held that if both parties have
performed the contract, no question of its validity can there-
after be raised.   In such case a promissory note given in
settlement for services rendered under an oral contract was
held valid.  *Mohr v. Rickgauer,* 117 N. W. (Nebr.) 950.

It has also been held by such court that where the con-
tract was mutually recognized and performed, a subsequent
action for damages for fraud based upon the fiduciary rela-
tion thus created could be maintained.  *Latson v. Buck et al.,*
126 N. W. (Nebr.) 760.

It was also held by the same court that a contract estab-
lished by correspondence of the parties was sufficient to answer
the call of the statute.  *Holliday v. McWilliams,* 107 N. W.
(Nebr.) 578.

These holdings are all consistent with the spirit and
manifest purpose of the statute as announced by the same
court.   The promissory note in the one case and the corres-
pondence in the other gave substance and certainty to the

contract and barred the way to mere invention and perjury. Some reliance is placed by appellant upon the case of *Maul v. Cole*, 144 N. W. (Nebr.) 247. It appeared in that case that an agent acting as such under a mere oral contract deceived and defrauded his principal. She thereafter sued for damages for the fraud. The agent as defendant pleaded that his contract of agency was oral and therefore void. It was held that such plea was not available to him in an action for fraud. It was enough that the agent had assumed to act as such for his principal and while acting as such had deceived her to her injury. The question of the validity of his agency contract was said not to be involved. The charge of fraud was based upon his actual conduct. We see nothing in this case to aid the appellant.

III. Lastly, it is urged by appellants that they proved their contract by the correspondence put in evidence. When this controversy arose, certain correspondence ensued between the plaintiffs and McKinney. Two letters

**3. BROKERS: commissions: statutes requiring written contract: sufficiency of evidence.**

from McKinney are in evidence and one from Dewar to McKinney. The letters of the plaintiffs are not in the record. It is urged that these letters proved the contract and they are relied upon under the *Holliday* case, *supra*. Taking the most favorable view of these letters, the most that can be said for them is that they indicate that McKinney had expected to allow the plaintiffs one and one-half dollars an acre and that he had allowed the same to Nugent in the justified belief that this was the understanding between Nugent and the plaintiffs. His liability for such commission is emphatically denied. Omitting this denial, however, it appears from such letters that whatever commission should be paid must be so paid by McKinney. McKinney is not a party defendant. There is nothing in the letters which could be construed as an admission of the liability of either of these defendants. We see no aid, therefore, to the plaintiffs in such correspondence. The plaintiffs would be at some disadvantage at this point if we

were to hold otherwise as to the effect of the letters. They sued upon the oral contract and that alone. In the *Holliday* case the suit was upon an alleged written contract. At the close of the trial, the plaintiffs herein amended their petition and declared upon the written contract. Upon motion of the defendants, this amendment was stricken by the court as having been filed too late. Complaint is made of this ruling. The trial court necessarily had a large discretion at this point. The amendment presented a very material change of issue and no adequate reason is shown why its filing should have been so long delayed. In the view we have already expressed as to the effect of these letters, we need not look farther into the merits of this ruling. We think the trial court ruled correctly in directing the verdict. The judgment is therefore —*Affirmed.*

4. PLEADINGS: amendments: rejection: discretion of court.

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.