H. L. DOBSON, Appellee, v. JOHN CLEMENS & COMPANY et al., Appellants.

**PLEADING:** Amendments—Withholding Known Defense. The act of
1. a party in withholding a *known* defense until the close of the evidence, or until the arguments are under way, is sufficient cause for rejecting the amendment.

**TRIAL:** Instructions—Nonapplicable to Pleadings. Requested in-
2. structions on matters not in issue must necessarily be rejected.

**EVIDENCE:** Burden of Proof—Pleaded Exceptions. A pleader who
3. claims that a particular service was rendered under a special agreement or exception to a general contract of employment has the burden to prove such claim.

*Appeal from Chickasaw District Court.*—II. E. TAYLOR, Judge.

DECEMBER 15, 1922.

ACTION at law, to recover a commission for the sale of real estate, alleged by plaintiff to be due him from the defendants. Trial to a jury, and verdict and judgment for plaintiff for $500. Defendants appeal.—*Affirmed.*

*M. E. Geiser* and *M. F. Condon,* for appellants.

*F. J. Conley* and *Hurd, Lenehan, Smith & O'Connor,* for appellee.

PRESTON, J.—The petition was filed December 22, 1920. The answer was filed March 2, 1921. The trial was begun March 22, 1921. Appellants state that they alleged payment to one Readout, who was the agent of plaintiff. As to this, appellee contends that defendants are seeking to shift their position in this court; that in the district court, defendants' claim was that the sale in this instance was made by Readout alone, and that plaintiff did not have to do therewith; that defendants did not plead nor attempt to plead that payment was made to Readout as agent, until the evidence was closed and the case was being argued to the jury, at which time defendants asked leave to amend their answer and set up that issue and to meet the proof. The trial court denied leave to so amend. This is really the gist of the appeal. Some of the instructions are complained of, but, for the most part, they are on the theory that the issue just stated was in the case.

Plaintiff alleged that he was a real estate dealer at Marshalltown, and defendants at New Hampton; that defendants, desiring to obtain business in Marshalltown and vicinity, and to find buyers for farms which defendants had for sale, entered into an oral contract with plaintiff, whereby defendants should use plaintiff's office, and plaintiff would assist defendants in procuring purchasers and in making land sales and exchanges, and defendants were to pay plaintiff for each sale or exchange wherein plaintiff helped, by himself or agent, and for the use

of his office, a reasonable compensation; that thereafter, and about January, 1920, defendants, having for sale and exchange certain described land containing 365 acres, sold and exchanged said property, and caused the same to be sold to one Bailey and Readout, at an agreed price of $109,225; that said sale was made by and with the assistance of plaintiff and plaintiff's office and agents; that the reasonable value of plaintiff's services is and was $5.00 per acre, or a total of $1,825.

Defendants answered in general denial, but admitted certain things, among them that plaintiff and defendants had an arrangement substantially as alleged by plaintiff, and that they were to pay him what his services were reasonably worth; admit that, in January, 1920, and prior thereto, defendants had listed for sale or exchange the real estate described in the petition, and that, in January, 1920, a contract was entered into between one Lahner and others, and that the sale was consummated about March 1, 1920. They alleged that Readout produced Bailey as a prospective purchaser, and that, through Readout's assistance and the efforts of these defendants, the sale was made, as above stated; that, prior to the time of said contract, Readout had been in the employ of plaintiff in his real estate business; that Readout was acting in his individual capacity, and not as agent of plaintiff; that defendants paid or .caused to be paid to the said Readout, at the time the contract was closed, the sum of $500, in full payment of the services rendered by him in making said exchange; that Readout was the only person who in any manner assisted defendants in said transaction. The total commission paid defendants was $1,000, of which they retained $500 for themselves. Each party introduced testimony which tended to support the issues so tendered. It is conceded that Readout was regularly employed as plaintiff's agent, and had been for some months prior to the date of this transaction and for a short time thereafter, until there was trouble between plaintiff and Readout in regard to this $500, plaintiff claiming that it did not belong to Readout. Readout testified as a witness for defendants, that, when he "hired to plaintiff," he told plaintiff that his brother-in-law, Bailey, desired to buy a farm, and that, in case he, Readout, learned of any farm which he wanted to show Bailey, he, Readout, would take a few days off, and if there was

any commission on the deal, he, Readout, should get the commission. This is denied by plaintiff. Readout also testified that he knew that the land was for sale, but that it was not listed with him individually, and further:

"I told Clemens and Lahner that it was my commission, and did not belong to Dobson. I was not acting for him. I did not accept this as the agent of Dobson. Dobson did not authorize me to collect the commission in this particular deal."

Lahner, testifying for defendants, says that Readout told him that he, Readout, helped make the sale, and was entitled to the commission. He testifies further:

"The day before the deal was closed, there was some conversation between Clemens and I in regard to the commission. Clemens came to me and said he had agreed to split the commission with Readout, and I told him he had spoke to me about Dobson getting commission, and that Readout said Dobson was entitled to no commission; that he was the one that was getting the commission. I told him I didn't care who the commission went to, but when I paid that commission, that would end it. Clemens might have spoken something about that Readout was working for Dobson, and to pay the commission to him, and he might have spoken again that he would take care of Dobson, and might have worded it in some other way; and whichever way, I would have to think it over. Readout at that time said he would stand between us and Dobson on any commission."

Plaintiff testifies that he never authorized or ordered Readout to collect any commission.

This, then, was the theory of the trial, and was in accordance with the issues raised by the pleadings. The issue was clear-cut as to whether plaintiff, or plaintiff through and with his agent, Readout, earned the commission, or whether Readout individually earned it. Defendants claimed that Readout had earned the commission, and was entitled to it, and that they had paid it to him. The evidence was substantially completed when, on March 24, 1921, defendants asked leave to amend their answer, and to conform the pleadings to the evidence, alleging substantially that, sometime after January, 1920, defendants orally agreed with Readout that they would pay or cause to be paid, in full compensation for all assistance rendered them in

making the sale referred to, one half of the commission which defendants were to receive, or which Lahner would pay; and that Readout, either for himself or as agent for Dobson, agreed to receive one half the commission in full payment and compensation of all services; and in another count, that there was no consideration for such a promise. The court denied leave to file such an amendment. There was no allegation therein of payment to plaintiff or to Readout as agent for plaintiff. It merely alleged that there was an agreement to accept one half the commission in full payment. Later, and just before plaintiff's closing argument to the jury, defendants asked leave to file their second amendment, wherein for the first time it was claimed squarely by defendants that payment had been made, in legal effect, to the plaintiff. The court also refused to permit such amendment. The defendants did not ask to have the case reopened, and to introduce further evidence on that issue, or permit plaintiff to meet it. It appears that some evidence crept in which might have some bearing on the question of Readout's agency; but in so far as it had a bearing upon the new issue tendered, such evidence was, for the most part, objected to and excluded, on plaintiff's objection. It was plaintiff's claim that Readout was his agent, and as such, had earned the commission for plaintiff; but the defendants' contention all through was that, in this matter, Readout was acting individually, and for himself. Even though some evidence had crept in as to the matter now under consideration, other evidence offered on the same proposition was excluded, and plaintiff was not required to meet such an issue. Manifestly, it would be unfair, under such circumstances, to say that that question had been in any manner litigated; and in such case, an amendment to meet the proof would not be proper.

1. It is the general rule, as contended by appellants, to allow amendments. It is unnecessary to cite the cases on this proposition. On the other hand, the proposed amendment tendered an entirely new issue. Code Section 3600, permitting amendments to meet the proof, provides that this may be done when the amendment does not change substantially the claim or defense. The case had been pending several months before the trial. The de-

1. PLEADING: amendments: withholding known defense.

fendants and Readout appear to have been acting together for more than a year, or from about January, 1920. Readout was a witness for defendants, as was Lahner; and while it is true that defendants and Readout were claiming that Readout was acting in his individual capacity, it is from their evidence that they thereafter sought to claim that Readout was acting as plaintiff's agent in regard to the sale and the payment of $500. No doubt defendants knew the real situation, if it was any different than they had claimed. There was no claim that the sole defense as originally pleaded was through inadvertence. Under such circumstances, we have held that, where the proposed amendment sets up a new defense which was known to the defendant before trial, the court may properly reject it, if offered after the trial commences, or where no excuse was offered for not sooner pleading the defense. On these propositions, see *Thoman v. Chicago & N. W. R. Co.*, 92 Iowa 196, 199; *Dumont v. Peet*, 152 Iowa 524, 527; *Brown v. Pearson Co.*, 169 Iowa 50, 59; *Breen v. Iowa Cent. R. Co.*, 184 Iowa 1200, 1208, and cases; *Pierson v. Chicago, G. W. R. Co.*, 116 Iowa 601, 609; *Herrstrom v. Newton & N. W. R. Co.*, 129 Iowa 507, 513; *Kettering v. Eastlack*, 130 Iowa 498, 502; *Union Mill Co. v. Prenzler*, 100 Iowa 540, 543; *Emerson & Co. v. Converse*, 106 Iowa 330; *Schoenhofen Brew. Co. v. Armstrong*, 89 Iowa 673, 675; *Holbert v. Keller*, 161 Iowa 723, 734. The *Schoenhofen Brewing Co.* case, supra, and other cases hold that the allowance of amendments at such a stage of the proceedings is within the sound discretion of the court. There was no claim of mistake in the allegations of the original answer. In the *Emerson* case, supra, it was held that parties should not be encouraged to wait until the last moment, before presenting their cases. Under the record presented, we are of opinion that there was no error in denying defendants' leave to amend.

2. Instructions 5 and 6, requested by defendants, relate to the subject we have just considered, and are to the effect that, if Readout was authorized by plaintiff to receive the money for plaintiff, or if defendants believed, when they paid Readout the money, that he was legally authorized to receive the same, then the verdict must be for the defendants. It is needless to discuss this ques-

2. TRIAL: instructions: nonapplicable to pleadings.

tion further, since, as we have seen, this matter was not in issue. Instructions 5 and 8 were in harmony with the theory of the trial and the evidence.

In this connection, it may be stated, without discussion, that appellee contends that where, as here, the agent is acting in furtherance of his own interest, and the third person knows such facts, the principal is not bound by the acts of the agent. On this they cite *Mayer v. Hamre,* 162 Iowa 662; *O'Meara v. Lawrence,* 159 Iowa 448; *Casady v. Carraher,* 119 Iowa 500; 2 Corpus Juris 837. Also, that persons dealing with one whom they know to be an agent, and to be exercising his authority for his own benefit, acquire no rights against the principal by the transaction. On this they cite *Dowden v. Cryder,* 55 N. J. L. 329 (26 Atl. 941, 942); *Union Nat. Bank v. Underhill,* 102 N. Y. 336 (7 N. E. 293).

3. Under the pleadings and proof, it appeared without dispute that Readout was, at the time in question, under the general employment of plaintiff in the real estate business. Defendants were claiming that this particular service was rendered under a special agreement, or exception to the general employment. By Instruction No. 4, the trial court put the burden of proof upon defendants to prove that Readout was acting under the exception. The court did not err in so doing. *Allen v. Travelers Prot. Assn.,* 163 Iowa 217, 223, and cases cited. See, also, *State v. Van Vliet,* 92 Iowa 476.

*3. Evidence: burden of proof: pleaded exceptions.*

As said, the principal point in the case is the refusal of the court to permit defendants to amend the answer. We are clear that at this point there was no error, and on the whole record, there appears no prejudicial error. The judgment is, therefore,—*Affirmed.*

Stevens, C. J., Weaver and De Graff, JJ., concur.